**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION**

| | | |
|---|---|---|
| **SARAH ARONSON, M.D.** | ) | CASE NO. 1:08-CV-763 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Judge Christopher A. Boyko** |
| v. | ) | |
| | ) | **ANSWER AND DEFENSES** |
| **UNIVERSITY HOSPITALS OF** | ) | **OF DEFENDANT** |
| **CLEVELAND, INC.** | ) | |
| | ) | |
| Defendant. | ) | |

Now comes Defendant University Hospitals of Cleveland, Inc. ("Defendant" or "UHC"), by, and through its counsel, and for its Answer to Plaintiff's Complaint, states as follows:

## BACKGROUND

1.  UHC admits Plaintiff was employed by UHC as a resident physician in its Department of Anesthesiology and Perioperative Medicine between March 1, 2006 and August 31, 2009. UHC denies the remaining allegations in Paragraph 1 of the Complaint.

2.  UHC admits the allegations contained in Paragraph 2 of the Complaint.

3.  UHC admits that Plaintiff represented to UHC and presented documentation that she had completed residency training programs in internal medicine, psychiatry, and family practice, and admits having no knowledge that she had any reported unsatisfactory performance evaluations in those residency programs. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the remaining allegations in Paragraph 3 of the Complaint.

4.  UHC admits the allegations contained in Paragraph 4 of the Complaint.

5.  UHC admits that Plaintiff is a board certified physician in psychiatry and family practice. UHC admits Plaintiff completed a one-year Medical Internship at the Norwalk Hospital, a

1

primary teaching hospital of the Yale University School of Medicine.  UHC admits Plaintiff completed a Postdoctoral Fellowship in the Section of Psychiatry at the Yale University School of Medicine in 1993.  UHC admits she completed a Residency in Family Practice in 1995 at Middlesex Hospital, in affiliation with the University of Connecticut School of Medicine.  UHC denies the remaining allegations in Paragraph 4 of the Complaint.

6.      UHC admits the allegations contained in Paragraph 6 of the Complaint except that UHC denies that Plaintiff was ever board certified in neurology.

7.      UHC admits that before beginning her anesthesiology residency at UHC, Plaintiff held professional positions as a consulting psychiatrist at University Hospitals of Cleveland; as a medical director at University Hospitals of Cleveland, and as a consulting psychiatrist at Heather Hill Hospital.  For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the remaining allegations in Paragraph 7 of the Complaint.

8.      UHC admits Plaintiff passed part 1 of the anesthesiology board examination.  For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the remaining allegations in Paragraph 8 of the Complaint.

9.      UHC admits that to obtain a Specialty Certification in Anesthesiology from the American Board of Anesthesiology, a physician, among other things, must have (i) obtained ABA credit for at least 36 months of approved training in anesthesia, and (ii) have on file with the ABA a Certificate of Clinical Competence with an overall satisfactory rating covering the final six-month period of clinical anesthesia training in each qualifying anesthesiology residency program.  UHC admits that every calendar half-year period of clinical anesthesia training in any one residency program must end with receipt of a satisfactory Certificate of Clinical Competence, and to receive credit from the ABA for a period of clinical anesthesia training that is not satisfactory, the resident must immediately complete an additional six months of uninterrupted

clinical anesthesia training in the same program with receipt of a satisfactory Certificate of Clinical Competence.  UHC admits that every residency training program is required to file, on forms provided by the ABA, an Evaluation of Clinical Competence in January on behalf of each resident who has spent any portion of the prior six months (from the prior July to December) and in July on behalf of each resident who has spent any portion of the prior six months (from the prior January to June) in clinical anesthesia training in or under the sponsorship of the residency program and its affiliates. UHC denies the remaining allegations contained in Paragraph 9 of the Complaint.

10. UHC admits the allegations contained in Paragraph 10 of the Complaint.

11. UHC admits Plaintiff took the Exams as alleged.  UHC denies the remaining allegations contained in Paragraph 11 of the Complaint.

12. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 12 of the Complaint.

13. UHC admits the allegations contained in Paragraph 13 of the Complaint.

14. UHC admits that Dr. Norcia, on September 9, 2008, completed a form that had been sent him called a "reference verification request," and in doing so he checked boxes rating Plaintiff as either good or excellent in all the categories provided on the form, other than the categories of "Rapport with administration," "Community Participation," and "Career orientation," for which he checked that he could not make an assessment.  UHC denies the remaining allegations contained in Paragraph 14 of the Complaint.

15. UHC admits that Dr. Norcia, on September 9, 2008, completed a form that had been sent him called a "reference verification request," and in doing so he checked boxes rating Plaintiff as either good or excellent in all the categories provided on the form, other than the categories of "Rapport with administration," "Community Participation," and "Career orientation," for which

he checked that he could not make an assessment.  UHC admits that Dr. Norcia placed a check mark on the line next to the phrase "close personal observation" and a check mark on the line next to the phrase "composite of evaluations by supervisors."  UHC admits that on a scale of one to four, with one being the highest, he checked level 2, as "recommended as qualified and competent."  UHC denies the remaining allegations contained in Paragraph 15 of the Complaint.

16.     UHC admits the allegations contained in Paragraph 16 of the Complaint.

17.     UHC admits that at all times during Plaintiff's employment with UHC, Plaintiff was employed pursuant to a Resident/Fellowship contract.  UHC admits that the Residence/Fellowship contracts entered into between Plaintiff and UHC contained language that "UHC agrees to provide an educational program that at a minimum meets the standards established by the ACGME … "  UHC denies the allegations contained in Paragraph 17 of the Complaint.

18.     UHC admits the allegations contained in Paragraph 18 of the Complaint.

19.     UHC admits that the ACGME Common Program Requirements set forth that "[d]uty hours must be limited to 80 hours per week, averaged over a four-week period, inclusive of all in-house call activities, but that "[a] Review Committee may grant exceptions for up to 10% or a maximum of 88 hours to individual programs based on a sound educational rationale."  UHC admits that the vacation days are excluded from the averaging calculation, and the averaging must be done by individual rotation or by four week blocks.  UHC denies the remaining allegations contained in Paragraph 19 of the Complaint.

20.      UHC admits that it has not requested approval from the ACGME to exceed the 80 hour limit for its anesthesiology residents.  UHC denies the remaining allegations in Paragraph 20 of the Complaint.

21.     UHC denies the allegations in Paragraph 21 of the Complaint.

4

22. UHC denies the allegations in Paragraph 22 of the Complaint.

23. UHC admits that the ACGME Common Program Requirements set forth that "[r]esidents must be provided with one day in seven free from all educational and clinical responsibilities, averaged over a four-week period, inclusive of call. UHC denies the remaining allegations contained in Paragraph 23 of the Complaint.

24. UHC denies the allegations in Paragraph 24 of the Complaint.

25. UHC denies the allegations in Paragraph 25 of the Complaint.

26. UHC denies the allegations in Paragraph 26 of the Complaint.

27. UHC denies the allegations in Paragraph 27 of the Complaint.

28. UHC denies the allegations in Paragraph 28 of the Complaint.

29. UHC admits that on October 14, 2008, Dr. Norcia and Dr. Wallace met with Plaintiff to discuss her clinical performance, and informed her of multiple unsatisfactory evaluations reported to them covering Plaintiff's performance during portions of the second half of 2008. UHC admits that of primary concern were reports of a lack of appropriately rapid response (verbally or physically) to events that occur in the OR, and that there were additional evaluations of concern from her Pain, OB, and ICU rotations. UHC admits that Dr. Norcia and Dr. Wallace also discussed with Plaintiff that the competency committee had reason to give her an "unsatisfactory" for her 6 month residence period covering the second half of 2008, but that Dr. Norcia and Dr. Wallace would meet with her in 4-6 weeks to review further evaluations and update any progress. UHC denies the remaining allegations in Paragraph 29 of the Complaint.

30. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 30 of the Complaint.

31. UHC admits the allegations contained in Paragraph 31 of the Complaint.

32. UHC admits that between May 2008 and November 23, 2008, Plaintiff received periodic evaluations from attending physicians supervising her work. UHC denies the allegations in Paragraph 32 of the Complaint.

33. UHC admits that on November 24, 2008, Drs. Norcia and Wallace met with Plaintiff because of her continuing performance issues. UHC admits that Drs. Norcia and Wallace informed Plaintiff that she might receive an "unsatisfactory" rating for her July 2008 – December 2008 training period. UHC denies the remaining allegations in Paragraph 33 of the Complaint.

34. UHC denies the allegations in Paragraph 34 of the Complaint.

35. UHC admits when Drs. Norcia and Wallace met with Plaintiff because of her continuing performance issues, they asked her if she was taking any medication that might impair her performance. UHC admits she responded that she was taking Topamax, a psychotropic mediation, and that Topamax might or might not be affecting her performance. UHC admits that they discussed, among other things, whether the Topamax she was taking was creating a response delay of which she was not aware. UHC admits that Plaintiff informed Drs. Norcia and Wallace that she would discontinue using Topamax. UHC denies the remaining allegations contained in Paragraph 35 of the Complaint.

36. UHC admits that based on Plaintiff's November 24, 2008 disclosure of her use of Topamax, and the potential risk to patient safety in Plaintiff's duties as a resident anesthesiologist, and the nature of the concerns expressed by several UHC anesthesiologists concerning Plaintiff's performance, Plaintiff was directed to obtaining an immediate fitness for duty evaluation using the University Hospitals Health System Employee Assistance Program, and was placed on paid leave on November 25, 2008, pending clearance from the EAP. UHC denies the remaining allegations contained in Paragraph 36 of the Complaint.

37. UHC admits that EAP communicated that Plaintiff had no substance abuse issues and was fit to return to duty with no restrictions or accommodations necessary. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the remaining allegations contained in Paragraph 37 of the Complaint.

38. UHC admits that Plaintiff communicated with Drs. Norcia and Wallace concerning when she could return from her paid leave, that she was cleared by the EAP to return to active duty on the afternoon of December 15, that Plaintiff was provided a response about returning to work on December 16, 2008, and that she returned to work on December 18. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 38 pertaining to whom Plaintiff met with as part of the EAP process and when. UHC denies the remaining allegations contained in Paragraph 38 of the Complaint.

39. UHC admits the allegations contained in Paragraph 39 of the Complaint.

40. UHC admits that under the requirements of the American Board of Anesthesiology, the total of any and all absences, other than attendance at scientific meetings not to exceed five working days per year, may not exceed 60 working days (12 weeks) during the three years of training, with excess absences requiring a lengthening of the total training time to the extent of the additional absence. UHC denies any remaining allegations contained in Paragraph 40 of the Complaint.

41. UHC admits that on December 26, 2008, Dr. Norcia submitted the written record of his performance assessment of Plaintiff covering her work during the period of 10/6/2008 – 10/10/2008, that he had already discussed with Plaintiff, and that his submission included his assessment, already discussed with Plaintiff, that Plaintiff had not performed at the level of a third year resident during the last half of 2008. UHC denies the remaining allegations contained in Paragraph 41 of the Complaint.

42. UHC admits the allegations contained in Paragraph 42 of the Complaint.

43. UHC admits the allegations contained in Paragraph 43 of the Complaint.

44. UHC admits that by letter dated January 7, 2009, it confirmed to Plaintiff in writing that she would receive an unsatisfactory evaluation for the second six month period of 2008, and that Plaintiff would be required to remediate by extending her residency for an additional six months. UHC denies the remaining allegations contained in Paragraph 44 of the Complaint.

45. UHC admits that Plaintiff has quoted a portion of the terms of Section II.D.4.e of the ACGME Institutional Requirements pertaining to grievance procedures and due process. UHC denies any other allegations contained in Paragraph 45 of the Complaint.

46. UHC admits that Plaintiff was repeatedly informed that, under the terms of the UHC Resident's and Fellow's Manual, the negative professional assessments of Plaintiff by UHC anesthesiology staff, and the professional judgment of the UHC residency competency committee that Plaintiff's performance did not meet UHC's expectations for a UHC anesthesiology resident at her level of training and required 6 months of additional training, were not subject to formal appeal. UHC denies the remaining allegations contained in Paragraph 46 of the Complaint.

47. UHC admits that it notified Plaintiff that she had unsatisfactorily completed the July-December 2008 training period, and would be required to remediate by extending her residency for an additional six month period beyond the originally planned 36 month residency period. UHC denies the remaining allegations contained in Paragraph 47 of the Complaint.

48. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 48 of the Complaint, and denies any allegation in Paragraph 48 that Plaintiff first learned of her unsatisfactory evaluation from the ABA in March 2008.

49. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 49 of the Complaint.

50. UHC admits Plaintiff applied for licensure in Maryland. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 50 of the Complaint.

51. UHC admits being informed by the ACGME that the ACGME had received a complaint from Plaintiff alleging that the UHC Anesthesiology Residency Program was in violation of the ACGME requirements. UHC has no knowledge of when Plaintiff submitted the complaint, and therefore denies the allegations concerning when she submitted the complaint. UHC denies the remaining allegations contained in Paragraph 51 of the Complaint.

52. UHC admits that Drs. Norcia and Shuck (but not Dr. Wallace) received a letter addressed to them from the ACGME dated May 27, 2009. UHC denies that Dr. Wallace received the letter. For lack of information or knowledge sufficient to form a believe as to their truth, UHC denies the remaining allegations contained in Paragraph 52 of the Complaint.

53. UHC admits that June 2, 2009, was the first workday for Plaintiff after the ACGME's notice of her complaint was received by UHC. UHC admits that in response to Plaintiff's May 27, 2009 request to them for feedback as to her status and information about her projected graduation date, Drs. Norcia and Wallace told Plaintiff on June 2, 2009 that her requested meeting was scheduled for June 4. UHC denies the remaining allegations contained in Paragraph 53 of the Complaint.

54. UHC admits that during the June 4 meeting, Dr. Wallace cited to notes and medical records that raised a wide range of concerns about Plaintiff's performance, and criticized Plaintiff's performance based on those materials. UHC admits that during the June 4 meeting Dr. Wallace informed Plaintiff that he considered her clinical competency and professionalism to

be unsatisfactory and unlikely to lead to successfully completion of the residency program. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 54 of the Complaint pertaining to alleged verbal feedback from attending physicians during March 2009. UHC denies the remaining allegations contained in Paragraph 54 of the Complaint.

55.     UHC admits that Plaintiff submitted a request in June 2009 for Family and Medical Leave. UHC admits she asked for and was granted one or two days of leave relating to adoption-related court proceedings for adoption of a son. UHC denies the remaining allegations contained in Paragraph 55 of the Complaint.

56.     UHC admits that in order to fulfill the rotation requirements for the 6-month extension of her residency, to which she agreed on February 4, 2009, and which included a month assignment to the ICU, and to accommodate her ensuing scheduling requests and other personal and professional commitments, she was at initially allowed to fulfill her ICU-month requirement by working in the ICU for the last two weeks of August, and then eventually excused her from the ICU requirement entirely. UHC denies the remaining allegations contained in Paragraph 56 of the Complaint.

57.     UHC admits that Dr. Shuck received a letter from Plaintiff dated July 13, 2009, and that among the many accusations contained in the letter were accusations that she was subject to "discriminatory and punitive scheduling, while basic educational responsibilities are neglected," and a "pattern of retaliation/discrimination" that involved "disregard [of] any concerns about educational training until it involves a request for leave to attend the birth of my son (December 2008) or to adopt my son (August 2009)." UHC denies the remaining allegations contained in Paragraph 57 of the Complaint.

58. UHC admits that on or about July 28, 2009, an ACGME representative visited UHC as part of an institutional review, and that UHC was informed by ACGME that the site representative would be meeting with Plaintiff. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations concerning what Plaintiff discussed with the site representative. UHC denies the remaining allegations contained in Paragraph 58 of the Complaint.

59. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 59 of the Complaint.

60. UHC admits that because of the concerns about Plaintiff's performance during the second half of 2008, UHC required Plaintiff to extend her residency by 6 months, through August 31, 2009. UHC admits that, under the standards of the American Board of Anesthesiology, the ABA would give Plaintiff credit for the July-December 2008 time period of her residency, in which she had performed unsatisfactorily, if it received notice that Plaintiff performed satisfactorily for the January-June 2009 time period. UHC admits that on August 25, Plaintiff raised with UHC representatives the above-referenced ABA rules. UHC admits that on August 26, 2009, Plaintiff asserted falsely to UHC representatives that she was "done here 2 months ago," and that Plaintiff requested to be excused from the remaining work requirements of her contract that was expiring August 31. UHC admits that on August 27, 2009, it provided Plaintiff formal notice that at the end of that day she would have no further clinical obligations to the UHC's Department of Anesthesiology and its residency program. UHC denies the remaining allegations contained in Paragraph 60 of the Complaint.

61. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 61 concerning when Plaintiff may have started new employment elsewhere than at UHC. UHC admits that its representatives responded honestly to

inquiries from the Peninsula Regional Medical Center in Maryland concerning Plaintiff's performance as a resident at UHC, in reliance on receipt of Plaintiff's signed absolute and unconditional release and waiver of all claims and release of all liability relating to the information provided.  UHC denies the remaining allegations contained in Paragraph 61 of the Complaint.

## COUNT I
*(Alleged Breach of Contract)*

62. UHC incorporates here by reference each and every statement set forth in Paragraphs 1-61 above.

63. UHC denies the allegations in Paragraph 63 of the Complaint.

64. UHC denies the allegations in Paragraph 64 of the Complaint.

## COUNT II
*(Alleged Unjust Enrichment)*

65. UHC incorporates here by reference each and every statement set forth in Paragraphs 1-64 above.

66. UHC admits it required Plaintiff, as a condition of graduation from its residency program, to extend her residency at UHC by 6 months, until August 31, 2009, and that Plaintiff contractually agreed to be employed as a resident by UHC for that six month extension period. UHC admits that, under the standards of the American Board of Anesthesiology, the ABA would allow Plaintiff credit for the July-December 2008 period of her residency, in which she had performed unsatisfactorily, if it received notice that Plaintiff performed satisfactorily for the January-June 2009 time period, and that as a result she would satisfy one of the ABA requirements, which is to have 36 months of satisfactory performance as a resident.  UHC denies the remaining allegations in Paragraph 66 of the Complaint.

67. UHC admits that it honored the financial commitments it made to Plaintiff in their contract. UHC denies the remaining allegations in Paragraph 67 of the Complaint.

68. UHC denies the allegations in Paragraph 68 of the Complaint.

69. UHC denies the allegations in Paragraph 69 of the Complaint.

## COUNT III
*(Alleged Tortious Interference with Economic Relations)*

70. UHC incorporates here by reference each and every statement set forth in Paragraphs 1-69 above.

71. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 71 of the Complaint.

72. UHC admits that Plaintiff represented that she had an offer of employment with some medical entity, but denies the remaining allegations in Paragraph 72 of the Complaint.

73. UHC denies the allegations in Paragraph 73 of the Complaint.

74. UHC denies the allegations in Paragraph 74 of the Complaint.

75. UHC denies the allegations in Paragraph 75 of the Complaint.

76. UHC denies the allegations in Paragraph 76 of the Complaint.

## COUNT IV
*(Alleged Tortious Interference with Economic Relations)*

77. UHC incorporates here by reference each and every statement set forth in Paragraphs 1-76 above.

78. UHC denies the allegation in Paragraph 78 of the Complaint.

79. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the allegations in Paragraph 79 of the Complaint.

80. UHC denies the allegation in Paragraph 80 of the Complaint.

81. UHC denies the allegation in Paragraph 81 of the Complaint.

82. UHC denies the allegation in Paragraph 82 of the Complaint.

83. UHC denies the allegation in Paragraph 83 of the Complaint.

## COUNT V
*(Alleged FMLA Interference)*

84. UHC incorporates here by reference each and every statement set forth in Paragraphs 1-83 above.

85. UHC admits the allegations in Paragraph 85 of the Complaint.

86. UHC admits the allegations in Paragraph 86 of the Complaint.

87. UHC admits that Plaintiff requested maternity leave starting December 22, 2008, which request was granted. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the remaining allegations in Paragraph 87 of the Complaint.

88. UHC denies the allegations in Paragraph 88 of the Complaint.

89. UHC denies the allegations in Paragraph 89 of the Complaint.

90. UHC denies the allegations in Paragraph 90 of the Complaint.

## COUNT VI
*(Alleged FMLA Interference)*

91. UHC incorporates here by reference each and every statement set forth in Paragraphs 1-90 above.

92. UHC admits the allegations in Paragraph 92 of the Complaint.

93. UHC admits the allegations in Paragraph 93 of the Complaint.

94. UHC admits that Plaintiff made a request in June 2009 for adoption leave, which was granted. For lack of knowledge or information sufficient to form a belief as to their truth, UHC denies the remaining allegations in Paragraph 94 of the Complaint.

95. UHC denies the allegations in Paragraph 95 of the Complaint.

96. UHC denies the allegations in Paragraph 96 of the Complaint.

97. UHC denies the allegations in Paragraph 97 of the Complaint.

98. UNC denies each and every allegation in the Complaint not heretofore specifically admitted.

## DEFENDANTS' AFFIRMATIVE DEFENSES

1. To the extent the Complaint fails to state claims upon which relief can be granted, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

2. To the extent Plaintiff is barred by the applicable statute of limitations, statute of repose, doctrine of laches, or other time-bar defenses and/or failure to exhaust her internal and/or administrative remedies, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6).

3. Some or all of Plaintiff's claims are barred by the doctrines of unclean hands, waiver and/or estoppel.

4. Count I of the Complaint is barred because any determination as to whether UHC's educational program has complied with the "standards established by the ACGME" is exclusively within the jurisdiction of the ACGME through the ACGME's complaint procedures and credentialing processes.

5. Count II of the Complaint is barred because the Complaint alleges the existence of specific contracts with express terms.

6. Count's I and II of the Complaint are barred because the decisions that Plaintiff challenges as a breach of contract or as resulting in unjust enrichment were the product of the professional assessment of Plaintiff's performance as an anesthesiology resident by Defendant's anesthesiologists, and/or were based on good and sufficient lawful causes and reasons.

7. At all times, Defendant acted in good faith and without fraud or malice.

8. Plaintiff's claims are barred, in whole or in part, to the extent plaintiff has failed to mitigate her damages. Plaintiff's damages, if any, must be reduced by the income he has received, or should have received, in mitigation and/or Defendant is entitled to a setoff of any back pay damages recovered by Plaintiff in this action equal to the sum of the amounts Plaintiff earned or received since her separation.

9. Plaintiff is not entitled to punitive damages because Plaintiff fails to state a claim against Defendant that would warrant punitive damages, and in any event, awarding punitive damages to Plaintiff against Defendant under the facts and circumstances of this case would violate the due process clause and/or other provisions of the United States Constitution and/or the Constitution of the State of Ohio.

10. At all times relevant hereto, Defendants performed and discharged in good faith each and every obligation owed, if any, to Plaintiff, without fraud, oppression, or malice as to Plaintiff or her rights, thereby precluding any and all claims for punitive damages.

11. Any and all claims concerning communications by Defendant's representatives with potential employers or credentialing entities are barred by the qualified privilege for communications concerning the performance of Defendant's residents, and/or by Plaintiff's express release of all claims arising from such communications.

12. Plaintiff's conduct concerning the matters alleged in the Complaint constitute carelessness, negligence, misconduct, and/or bad faith, or Plaintiff was otherwise at fault, and the resulting harm, if any, that Plaintiff sustained was proximately caused and contributed to, in whole or in part, by Plaintiff's own conduct.

13. Defendant's conduct toward Plaintiff during the course of her residency with Defendant was a just and proper exercise of managerial discretion and medical professional discretion,

16

undertaken for fair and honest reasons, comporting with good faith under the circumstances then existing, and was privileged and justified.

14. Plaintiffs' Complaint fails to allege facts sufficient to allow recovery of attorneys' fees from Defendant.

15. To the extent that Plaintiff engaged in conduct which, if known to Defendant prior to the termination of her employment, would have resulted in her termination from employment, her right to recovery is further limited or barred.

16. Defendant expressly reserves the right to assert and pursue additional defenses that may become known through discovery or otherwise.

17. Defendant states that the defenses included in this Answer are set forth to ensure compliance with Federal Rule of Civil Procedure 8(c), without representing or conceding that Defendants have the burden of proof of that the defenses necessarily constitute "avoidances" or "affirmative defenses" within the meaning of Federal Rule of Civil Procedure 8(c) or other applicable law.  No defense in this Answer shall be deemed an affirmative defense unless failure to assert the defense will result in waiver thereof.  Defendants further states that pursuant to Federal Rule of Civil Procedure 8(e)(2) and based on Plaintiff's claim, Defendant plead defenses in the alternative and hypothetically without representing or conceding the application of such defenses or waiving any objections or defenses to Plaintiff's claims.

**WHEREFORE**, having fully answered the Complaint, Defendant prays unto the Court the following:

1. That the Complaint be dismissed with prejudice;
2. That Plaintiff have and recover nothing of Defendant;

17

3. For such other and further relief, including but not limited to reasonable attorneys' fees, as the Court deems just and proper.

Respectfully submitted,

OGLETREE DEAKINS NASH SMOAK & STEWART P.C.

By: */s/ Barton A. Bixenstine*
Barton A. Bixenstine
Josephine Noble
127 Public Square
4130 Key Tower
Cleveland, Ohio 44118
Phone: (216) 241-6100
Facsimile: (216) 357-4733
*Bart.Bixenstine@ogletreedeakins.com*
*Josephine.Noble@ogletreedeakins.com*

*Attorneys for Defendant University Hospitals of Cleveland*

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 2, 2010, the foregoing *Answer and Defenses of Defendant* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

                                      */s/ Barton A. Bixenstine*
                                      Attorneys for Defendant University of Cleveland

OGLETREE DEAKINS NASH SMOAK & STEWART P.C.
127 Public Square
4130 Key Tower
Cleveland, Ohio 44118
Phone: (216) 241-6100
Facsimile: (216) 357-4733

8276804.1 (OGLETREE)