1

- - - -

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

- - - - -

SARAH ARONSON, M.D.,            )
        Plaintiff,              )
                                )
     v.                         )       CASE NO. 1:10-CV-00372
                                )       JUDGE BOYKO
UNIVERSITY HOSPITALS OF         )
CLEVELAND,                      )
        Defendant.              )

- - - - -

DEPOSITION OF DAVID WALLACE, M.D.

Thursday, December 23, 2010

- - - -

The deposition of DAVID WALLACE, M.D., a Witness

herein, taken by the Plaintiff as if upon examination under

the Ohio Rules of Civil Procedure, before me, Mary C. Peck,

a Stenographic Reporter and Notary Public within and for the

State of Ohio, at the offices of Ogletree, Deakins, Nash,

Smoak & Stewart, P.C., Key Tower, 127 Public Square, Suite

4130, Cleveland, Ohio, commencing at 9:00 a.m., the day and

date above set forth.

- - - -

27

1        Aronson her performance?

2   A   Yes.

3   Q   What did you say to her about her performance?

4   A   Basically I had all of the different interactions

5        that we had had, and at this point, she was past what

6        would have been the normal date of matriculation for

7        her when she first started in Clinical Anesthesia

8        because she had received an unsatisfactory for the

9        prior six-month period.  And based on the evaluation

10      information that I had, I told her that I didn't

11      think she was probably going to get a satisfactory

12      for the six-month period from January of '09 through

13      June of '09.

14   Q   Before you said that to Doctor Aronson, had you

15      shared that opinion with Doctor Norcia?

16   A   We had talked about Doctor Aronson's performance on

17      many, many occasions whenever we would get some

18      evaluation information, because at the end of the

19      six-month period, for all residents, we have to fill

20      out that ABA Clinical Competency Report, and in order

21      to do that for someone to have a successful

22      completion of that six-month credit, all answers have

23      to be answered as a satisfactory.  If there's a

24      single one that's unsatisfactory, then the whole

25      six-month period gets an unsatisfactory result.

1       about the lack of appropriately rapid response was of

2       primary concern?

3   A   I would say that I either wrote it or helped write it

4       in this letter, yes.

5   Q   But you don't believe it to be accurate?

6   A   Well, it was a primary concern. It's true. That was

7       a primary concern. There were other concerns and

8       there were other -- this was a resident evaluation

9       for a time period, so it was for more than -- when

10      you say the primary concern, there was other reasons

11      that we were meeting with her besides just that to

12      address that issue. But that was a primary concern.

13  Q   What other concerns were you discussing?

14  A   Her inability to appreciate clinical situations or

15      not processing and reacting to information, and

16      another probably even greater concern was her

17      inability to identify reasons for not being able to

18      respond when she would agree that a response should

19      be done.

20  Q   And all of those things are addressed in the document

21      that's Exhibit 31, right?

22  A   Yes. I believe.

23  Q   And so you raised these issues with Doctor Aronson

24      during the meeting, right, during the October 14th

25      meeting?

150

 1   Q   Why did you leave all the check boxes below that

 2       blank?

 3   A   I checked Tier 1 and I put in my comments that I felt

 4       was appropriate.

 5   Q   Was Doctor Aronson exhibiting impaired functioning?

 6   A   Sure.

 7   Q   Why didn't you check off impaired functioning?

 8   A   I guess I felt that my description was more specific

 9       than these generalized check-offs.

10   Q   Did you think checking off impaired functioning would

11       be in any way inconsistent with your description?

12   A   Not necessarily.

13   Q   And the only reason you left impaired functioning

14       blank was because you thought that your description

15       would be sufficient; is that accurate?

16   A   The description here was sufficient to get the

17       process started.

18   Q   Have you ever provided any information in response to

19       any inquiry about Doctor Aronson seeking employment

20       after her residency?

21   A   I believe I have.

22   Q   Okay.  Were you aware that in December of 2008 she

23       was in the process of obtaining a job with Sheridan

24       Healthcare in Florida?

25   A   In December of 2008, I might have been generally

182

State of Ohio,                    )
                                  )SS:        CERTIFICATE
County of Cuyahoga,               )

        I, Mary C. Peck, a Notary Public within and for
the State aforesaid, duly commissioned and qualified, do
hereby certify that the above-named DAVID WALLACE, M.D. was
by me, before the giving of his deposition, first duly sworn
to testify the truth, the whole truth, and nothing but the
truth;

        That the deposition as above set forth was reduced
to writing by me by means of stenotypy, and was later
transcribed upon a computer by me;

        That the said deposition was taken in all respects
pursuant to the stipulations of counsel herein contained;
that the foregoing is the deposition given at said time and
place by said DAVID WALLACE;

        That I am not a relative or attorney of either
party or otherwise interested in the event of this action.

        That I am not nor is the court reporting firm with
which I am affiliated under a contract as defined by Civil
Rule 28(D).

        IN WITNESS WHEREOF, I hereunto set my hand and
seal of office, at Cleveland, Ohio this 10th day of January,
A.D. 2011.


        _____

        Mary C. Peck, Notary Public



        My commission expires December 30, 2011