UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SARAH ARONSON, M.D. | ) | CASE NO. 1:10-cv-372 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| v. | ) | **AFFIDAVIT OF BARTON A.** |
| | ) | **BIXENSTINE, ESQ. IN SUPPORT OF** |
| UNIVERSITY HOSPITALS OF | ) | **DEFENDANT UNY HSOPITALS OF** |
| CLEVELAND, INC., | ) | **CLEVELAND, INC.'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| Defendant. | ) | |

| | |
|---|---|
| STATE OF OHIO | ) |
| | ) SS. |
| COUNTY OF CUYAHOGA | ) |

I, Barton A. Bixenstine, Esq., pursuant to 28 U.S.C. § 1746, state as follows under penalty of perjury:

1. My name is Barton A. Bixenstine.

2. I am over the age of 21, and I am competent to testify to, and have personal knowledge of, the matters set forth in this declaration. I understand that this declaration is for use in connection with the above-captioned civil litigation, and I give it freely for that purpose.

3. I am an attorney with the law firm of Ogletree Deakins Nash Smoak & Stewart, P.C., and I am counsel for Defendant University Hospitals of Cleveland, Inc. ("Defendant") in this matter. I make this Affidavit in support of Defendant's Motion for Summary Judgment.

4. Attached hereto as Exhibit UU is a copy of correspondence from Dr. Sarah Aronson dated December 14, 2008 regarding her fitness-for-duty evaluation.

5. Attached hereto as Exhibit XX is a copy of an email from Dr. Aronson to Dr. Jerry Shuck dated March 10, 2009 responding to reported negative assessments regarding Dr. Aronson's performance.

6.  Attached hereto as Exhibit YY is a copy of a series of emails between Dr. Aronson and Dr. Shuck dated January 6, 2009 through March 2, 2009 regarding Dr. Aronson's meeting with Dr. Nearman, and seeking Dr. Shuck's thoughts prior to Dr. Aronson proceeding with submitting a formal complaint to the ACGME.

FURTHER AFFIANT SAYETH NAUGHT

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of January, 2011.

_____
Barton A. Bixenstine, Esq.

9716839.1 (OGLETREE)

December 14, 2008
Sarah Aronson, MD

I was informed by Dr. Wallace at the end of November that I may receive an "unsatisfactory" for my last 6 months of residency (July 2008 – December 2008) though I have received only satisfactory to positive evaluations for that time period. I have achieved passing scores on in-training board exam every year in residency.

Despite this, 3 months prior to my graduation date of Feb. 28, 2009, I was ordered by Dr. Wallace to undergo a Tier 1 "fitness-for-duty" evaluation citing concerns of substance abuse and/or cognitive impairment. This occurred during the last week of my Block/APS month, a demanding rotation during which I received positive feedback from my supervising faculty. No other preliminary, less intrusive, interventions were offered or considered at any time, as are outlined in the Resident's and Fellows Manual or the UHCMC Policies and Procedures, nor was Dr. Norcia aware until several days later that this action had been taken.

A fitness-for-duty evaluation is a "...mandatory referral process, which evaluates an employee's ability to perform his/her job functions when pronounced changes, which negatively impact his/her work performance, are demonstrated...Types of impairment covered by Fitness for Duty include: 1. Psychological Impairment. Significant changes in behaviors and/or psychological state. This may include but not be limited to: threats of harm against self or others, destruction of property or threats of destruction, dramatic mood swings, explosive anger or acting-out behaviors, extreme disclosure of personal information, and disorganized thoughts. When related to suspected substance abuse, including alcohol, refer to Policy 43, "Substance Abuse Policy" and Policy 43B, "Substance Abuse Screening Policy", both in Volume I of the UHCMC Administrative Policy and Procedure Manual."

There was no documentation provided or substantive examples given to justify Tier 1 referral other than the unsubstantiated opinion of Dr. Wallace.

No remediation, corrective action, or probationary period was instituted prior to Tier 1 referral (see HR-72).

I complied fully with the mandated evaluation. No evidence of substance abuse or cognitive impairment was found.

I have been a licensed physician for 20 years and on the medical school faculty and medical staff of this hospital since 2001. This action tarnishes my reputation within the hospital and certainly within the residency.

Threats have been made by Dr. Wallace that I might not be allowed to graduate **at all** from the program, without any supporting documentation, warning or probationary period. These statements were made, for example, to the EAP liaison. I am unable to ascertain whether Dr. Wallace has been able to maintain confidentiality or objectivity re: my residency. I am concerned that he may be making comparably negative and

ARON 0150

**EXHIBIT UU**

December 14, 2008
Sarah Aronson, MD

inflammatory statements to faculty and staff who will be evaluating me and who participate in the decision regarding my graduation.

I have an employment contract executed with start date of March 1, 2009. If I am unable to start on this date my contract may be void, and my employment would be in jeopardy. I am the sole financial support for a family of 5, including a new baby expected in a week or less.

Fitness-for-duty testing was completed December 4th. I had a final visit with evaluator on December 9, 2008, to review his final report. Despite my contact with the EAP liaison, there has been no response to the report and no plan for return to work has been offered to me as of the close of business December 13th.

I had saved 18 days of PTO to use for maternity/adoption leave this month, of which my program directors have had at least 6 months notice. While I have a legal right to this leave, I intentionally saved my vacation time so that my graduation would not be delayed by missing work in excess of the 60 days/3 years I am allowed by the ABA.

Because of my Tier 1 status, I was unable to go to my last department holiday party even though the evaluation was completed 4 days prior. I was unable to complete my APS rotation, and could not participate in Journal Club at which I was scheduled to present this month.

The residency program created a delay in my process for licensure in the state of Florida by not responding to the routine residency verification request from FCVS until I specifically inquired and requested they respond.

I have cooperated fully with all referrals for testing. I see no justification for the decision to remove me from duty. The timing of this action, 3 months before my graduation and 3 weeks before the arrival of a new baby, is at best inappropriate and ill-advised. At worst, it is arbitrary and malicious.

I do not currently trust in the ability of my directors to interact with me fairly and reasonably. Given this, I would like an advocate present with me when the outcome of this process is discussed with the program directors.

Sarah Aronson, MD
UHCMC
Asst Professor, Case School of Medicine

```
                              follow-up js.txt
From: Aronson, Sarah
Sent: Tuesday, March 10, 2009 11:45 AM
To: Jerry Shuck
Subject: follow-up

Attachments: Attachment Info.htm
```

Dr. Shuck,

I apologize for continuing to direct my concerns to you, but you are my only outlet at present. The longer my training situation continues as is without some substantive response to me from my department, the more malignant it feels. As a result, with some sense of urgency, I find myself writing yet another letter.

I responded promptly and concretely, in good faith, to correct any possible deficiencies in my performance. My file will show that I have attempted to communicate with my supervisors throughout this process, expressing my concerns as well as my willingness to develop a mutually acceptable plan of action. This has produced little response other than the continued execution of Dr. Wallace's original remediation plan. My evaluations from faculty who work with me have been and continue to be good. My program directors have not, in my opinion, been either timely, honest, or objective in their dealings with me.

I believe my supervisors must be required to account for the lack of procedural justice I feel I have experienced, and respond to the evidence which contradicts their view. I understand the relative immunity and sovereignty faculty enjoy in the realm of academic appraisal, and the legal precedents and rationale for it. The potential for abuse of power, however, is one reason the ACGME laid out requirements for due process in both academic and disciplinary cases (attached). Being told that at least my extra time won't go on record with the NPDB is about as comforting as hearing that I'll get a misdemeanor instead of a felony, when my Miranda rights were violated and the charge itself is questionable. I should be allowed a disinterested review that does not put me at additional professional risk by incurring a disciplinary action.

I will tell you that Dr. Wallace threatened to fire me 2 years ago citing "unprofessional behavior" when I had a foot surgery, and a longer than anticipated period of non-weight-bearing complicated the call schedule. I believe that he is biased in his assessment of me and was quite eager to impose both the EAP evaluation and the subsequent 6-month penalty, though he could not cite a single example to me of "cognitive impairment" when I asked him directly. Dr. Norcia can only give me examples when I didn't move or speak as fast as he would have liked or expected, but has said that my actions and/or responses themselves were correct and appropriate. I've not received at any time the specifics of any other concerns that may have been communicated to the program directors.

I continue to consider entering a complaint with the ACGME, if only to improve the process for future residents. I have no viable counter to oppose my treatment but the expression of my opinion and my continued commitment to my medical practice.

Page 1

follow-up js.txt

If an adequate response to my concerns doesn't materialize, I will still bring my best effort to complete my training here, though it will be with little faith in, or respect for, my department leadership. I envision that as an unpleasant but unavoidable circumstance as I work to minimize the adverse consequences for my career.

You asked me what I want at this point. Ideally, at this point, I want the decision to extend my training reversed and my permanent record cleared. Failing that, I want the right to an appeal and review of these decisions by an impartial committee without incurring the penalty of a recorded and reportable disciplinary action. If that is denied, I want at the very minimum clear documentation in my record that addresses this as a transient medical issue and does not impugn my professionalism.

Thank you for being so accessible during what has become the most difficult passage in my professional career. I considered cc'ing this to Dr. Nearman, but I wanted to hear back from you first.

Sincerely,


Sarah Aronson, MD

Sarah Aronson, MD
UHHS/Case School of Medicine

```
                                              RE question.txt
RE: questionFrom: Aronson, Sarah
Sent: Monday, March 02, 2009 10:25 AM
To: Shuck, Jerry
Subject: RE: question
```

Will do, thanks.

Sarah Aronson, MD
UHHS/Case School of Medicine

---

From: Shuck, Jerry
Sent: Mon 3/2/2009 10:23
To: Aronson, Sarah
Subject: RE: question

Call me tomorrow afternoon.

Jerry M. Shuck, MD, D.Sc
Director Graduate Medical Education
Designated Institutional Official
Professor of Surgery
Associate Dean for Graduate Medical Education
Case Western Reserve University
University Hospitals of Cleveland
11100 Euclid Avenue
Cleveland, OH 44106
216-844-3872 (office)
216-844-1949 (facsimile)

---

From: Aronson, Sarah
Sent: Monday, March 02, 2009 9:53 AM
To: Shuck, Jerry
Subject: RE: question

Certainly - should I contact your office to arrange a time? I'm off campus today, I could talk anytime on the phone, though it's probably better to talk in person.
Sarah

Sarah Aronson, MD
UHHS/Case School of Medicine

---

From: Shuck, Jerry
Sent: Mon 3/2/2009 09:29
To: Aronson, Sarah
Subject: RE: question

Please talk to me before you go further.

Page 1

ARON 0217

**EXHIBIT YY**

RE question.txt

Jerry M. Shuck, MD, D.SC
Director Graduate Medical Education
Designated Institutional Official
Professor of Surgery
Associate Dean for Graduate Medical Education
Case Western Reserve University
University Hospitals of Cleveland
11100 Euclid Avenue
Cleveland, OH 44106
216-844-3872 (office)
216-844-1949 (facsimile)

---

From: Aronson, Sarah
Sent: Sunday, March 01, 2009 10:27 PM
To: Shuck, Jerry
Subject: RE: question
Importance: High

Dr. Schuck:
I don't think I provided you with any follow-up to the meeting I had with Drs. Nearman and Norcia in January. Dr. Nearman deferred to the assessment of the program directors and had little to say otherwise.

My documented evaluations from faculty continue to be good, as they were in November prior to this process and were since March of last year. I am receiving minimal supervision in the OR.

I am preparing to submit a "concern" or possibly a formal complaint to the ACGME regarding the lack of timely notification/intervention in my case, the lack of documentation, and particularly the lack of access to an appeal process. My recent review of the ACGME institutional requirements suggests that the differentiation of "academic" vs. "disciplinary" interventions when it comes to the right to an appeal is not valid.

I am notifying you of this in confidence as I believe I should seek your thoughts on the topic before I proceed.

Thank you,
Sarah Aronson


Sarah Aronson, MD
UHHS/Case School of Medicine


---

From: Shuck, Jerry
Sent: Tue 1/6/2009 16:24
To: Aronson, Sarah
Subject: RE: question

Sarah -

Page 2

ARON 0218

RE question.txt

I'm glad that you are seeing Dr. Nearman soon. I have not spoken with him. I think at this time I can't be seen as your advocate. Your agenda is to get clarity as to the chances of success (from his perspective) of this extra time. He needs to know if you are going to agree to this plan. Ask for suggestions for improving your performances. He will have been advised by Norcia/Wallace, I'm sure. You need to have some face time with him, which can be invaluable as he becomes more engaged in the process. It would be great if he could become your mentor, sympathizer, and/or advocate. Good luck.

JMS

Jerry M. Shuck, MD, D.Sc
Director Graduate Medical Education
Designated Institutional Official
Professor of Surgery
Associate Dean for Graduate Medical Education
Case Western Reserve University
University Hospitals of Cleveland
11100 Euclid Avenue
Cleveland, OH 44106
216-844-3872 (office)
216-844-1949 (facsimile)

-----Original Message-----
From: Aronson, Sarah
Sent: Tuesday, January 06, 2009 3:58 PM
To: Shuck, Jerry
Subject: question

Dr. Shuck,
Thank you for talking with me yesterday. On your suggestion, I have a meeting scheduled with Dr. Nearman this Thursday.

I wanted to ask if you have advice for me as to how I should approach that conversation, or any thoughts on what might come out of the meeting. Have you had opportunity to speak with him?

Thank you again for your time,

Sarah Aronson, MD
UHHS/Case School of Medicine

Page 3

ARON 0219