11/28/08

I am writing this as an initial response to my recent performance review of mid-October and Nov. 24, and the decision of Drs. Wallace and Norcia to remove me from clinical service pending a fitness-for-duty evaluation.

RECEIVED

On reviewing the data of the past 9 months, I don't feel this decision was justified. I understand, however, the highest priority is to ensure patient safety and clinical reliability, and I will comply unreservedly in the evaluation that has been mandated.

NOV 28 2008

During my time in this program, I have received a pattern of evaluations regarding my need to improve my efficiency and speed of response. Since March of last year, I have made it a priority to develop this aspect of my practice. For the past 6-7 months I have not received any negative evaluations in this area.

I gave some thought to individual evaluations as well.

Regarding Dr. Zahniser, I was surprised and confused by both of his evaluations. In his second, he rates my performance as satisfactory with no comment to me, but then states that I am the "worst" resident and "very weak".

Regarding Dr. Jonsyn, I will say that I have no doubts regarding his commitment to patient care and his desire to be a good faculty member. In comparison to our other ICU faculty, he has difficulty with time management and has a disorganizing and stressful effect on the team, in my experience. I regret that I was not able to "manage" him in February, or in October, when I knew what to expect but had an extremely busy service and had to work with him for three weeks. I have discussed my concerns regarding his behavior with Drs. Norcia and Rowbottom. I will take serious issue if his evaluation of me forms a substantial basis for any decision regarding my competency as a resident.

In March I believe Dr. Levin commented that I had "no sense of urgency" on OB and that I could speed up my epidural placements, but at the same time commented positively regarding my clinical and supervisory ability. I certainly feel a sense of urgency on the OB service when those situations arise, and proceed accordingly. My temperament is such that my demeanor stays fairly level even in emergencies; I can see that might create an impression that I don't appreciate the urgency if my overall speed is already an issue. I don't think I can change my temperament, but I think my speed has improved. I can see also the importance of verbally communicating my understanding of a situation in order to create a sense of confidence.

In April, Dr. Hayek and I discussed some of these issues. I did find it difficult at the beginning of the month to find the most team-efficient way to divide my attention between the consult service, the clinic, and the MOSC pre-op/procedure room. I take responsibility for that, as it was not for lack of effort, and I'm sure many residents can move in and out of that role with more smoothness than I did. I also took suggestions from the fellows and Dr. Hayek and improved my distribution of effort. I don't feel that Dr. Hayek can comment meaningfully on my vigilance or acute responsiveness as an anesthesiologist.

In May, I remember the case with Dr. Adamek, and I will defer to his experience; while I wasn't dawdling, I'm certain that I could have streamlined my preoperative preparation even more and speeded the process without compromising her care. Dr. Adamek has given me very high ratings on his previous evaluations.

Since May of 2007, I have had satisfactory to positive evaluations. I am approaching faculty with whom I have worked over the past 7 months to request more detailed feedback regarding these concerns. In my last meeting with Dr. Norcia and Wallace together, I became concerned that perhaps the topiramate that I take for migraine prophylaxis was creating a response delay in me of which I was not aware, and I suggested the option of involving the EAP in this process. I did not anticipate being removed from clinical duties as a result of that referral, and question the necessity of that approach given my evaluations since May 2007. I am, however, willing to complete the process as currently laid out in a timely fashion.

It is my hope that we can come to a resolution of these concerns as soon as possible.

Sincerely,
Sarah Aronson, MD

DEFENDANT'S EXHIBIT AA

Request for Appeal Committee, Graduate Medical Education
Sarah Aronson, MD
23 December 2008

Dr. Shuck:

I am writing to request that your office convene a committee to hear and review my appeal regarding the potential decision of my residency program to extend my training an additional 6 months.

While I have not been given written notice to this effect, Dr. David Wallace indicated to me at our meeting last week that he intended to rate my performance for the period of July 2008 to December 2008 as "unsatisfactory", and would require me to extend my residency by 6 months in order to graduate.

Should the Education Committee of our department accept this action and mandate an additional 6 months of training, I will initiate an appeal.

During that process, I will bring evidence to demonstrate that I have received only satisfactory or better evaluations for that time period.

In July 2008, I achieved a score on the In-Training Exam predictive of passing the written Anesthesiology board exam, and have done so for all 3 years in this residency.

I will show that during the past 4 months, Dr. Matthew Norcia wrote letters of reference in support of my applications for several post-residency positions as an Anesthesiologist, describing me as "good" or "excellent" in the full range of activities related to those positions. When preparing those recommendations, Dr. Norcia did not at any time indicate to me that my graduation was in question, or that I should delay or reconsider contracting for employment to start in March 2009 or initiating an expensive licensure process in another state.

Throughout this process, neither Drs. Norcia nor Wallace have been able to provide me with a single concrete example of substandard performance, and both have said that they do not feel my practice has been unsafe. Despite this, Dr. Wallace initiated a fitness-for-duty evaluation citing "cognitive impairment", again not substantiated by examples or documentation. This evaluation found no evidence of impairment, and yet the process kept me off clinical duty from Dec.1 to Dec. 17, 2008.

In summary, I feel that the threat to delay my graduation from residency (scheduled for Feb 28, 2009) is not supported by any objective assessments or evaluations, or feedback that was available to me. On the contrary, my documented evaluations, my references from Dr. Norcia, and my performance on the In-Training Exam support my readiness to graduate. This action occurring now just 2 months prior to my completion date, appears illogical and unsubstantiated, and yet would impose severe consequences upon me. These include the loss of a job for which I've signed a contract to start March 2nd, and the loss of the funds, time, and energy I've invested in obtaining Florida licensure and investigating several job opportunities. Perhaps more significant, it places a mark on my permanent record that will have to be explained for any future credentialing process I undergo.

I appreciate the objective review of the Appeal Committee should the need arise. In the interim I hope that Drs. Wallace and Norcia will become open to alternative and less punitive ways of addressing our respective concerns.

Sincerely,


Sarah Aronson, MD
Clin. Asst. Prof., Case School of Medicine
Resident, CA-3, Dept of Anesthesiology and Perioperative Medicine



From: Nearman, Howard
Sent: Tuesday, January 27, 2009 10:58 PM
To: Aronson, Sarah
Subject: RE: f/u


I will be happy to talk with him. I find honesty is the best policy, but will leave the final decision to you. Is it OK to tell him that your performance was not satisfactory, and that, upon evaluating the possibilities as to why, we came up with the potential drug side effect? I acn then tell him of the plan and perhaps provide progress reports.

Let me know your thoughts.

-----Original Message-----
From: Aronson, Sarah
Sent: Fri 1/23/2009 1:21 PM
To: Nearman, Howard
Subject: f/u

Howard,
Dr. Longfellow, who is the director of the practice that hired me, will likely contact you next week for comment/confirmation regarding events surrounding this extension of training.  Can you let me know if that's acceptable to you, and could you give me some idea of how you think you'll respond?
Thank you,
Sarah


Sarah Aronson, MD
UHHS/Case School of Medicine



Feb 19 2009 4:48     FHFMedStaffOffice          386 586 4249              p.2

 FLORIDA HOSPITAL *Flagler*

**Medical Staff Office**
**60 Memorial Medical Parkway**
**Palm Coast, FL 32164**
Telephone 386-586-4243
Fax 386-586-4249

February 19, 2009

Matthew Narcia, MD
11100 Euclid Avenue
Cleveland, OH   44106

Dear Dr. Narcia,

RE:     **Sarah Aronson, MD  (Anesthesiology)**

The above named practitioner has applied for membership to the Medical Staff of Florida Hospital Memorial System, and has given your name as a **Professional Reference**. We would appreciate your response to the following questions:

I.  REPORT IS BASED ON (Circle one)
   A. Close personal observation
   B. General Impression
   C. A composite of evaluation by supervisors
   D. Colleague

II. EVALUATION

This evaluation should be based on demonstrated performance compared to that reasonably expected of a practitioner at his/her level of training, experience, and background.  Please rate the subject in each of the following categories on a scale of 1 to 10 or N/A (not applicable), with 1 being the bottom and 10 the top of the scale.

|   | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | N/A |
|---|---|---|---|---|---|---|---|---|---|----|-----|
| Medical/Clinical knowledge |   |   |   |   |   |   |   |   | X |    |     |
| Technical and clinical skills |   |   |   |   | X |   |   |   |   |    |     |
| Clinical judgment |   |   |   |   | X |   |   |   |   |    |     |
| Interpersonal & Communication skills |   |   |   | X |   |   |   |   |   |    |     |
| Professionalism |   |   |   |   |   | X |   |   |   |    |     |
| *Other* |   |   |   |   |   |   |   |   |   |    |     |
| Patient Management |   |   |   |   | X |   |   |   |   |    |     |
| Uses evidence-based medicine (protocols, policies, etc) |   |   |   |   |   |   |   |   | X |    |     |
| Ethical conduct |   |   |   |   |   |   |   | X |   |    |     |
| Timeliness of medical record completion |   |   |   |   |   |   |   |   |   |    | X |
| Physician-patient relationship |   |   |   |   |   |   |   | X |   |    |     |
| Cooperativeness/ability to work with others |   |   |   |   |   | X |   |   |   |    |     |
| Ability to understand and speak English |   |   |   |   |   |   |   |   | X |    |     |
| Appearance |   |   |   |   |   |   |   | X |   |    |     |



DEFENDANT'S EXHIBIT DD

Feb 19 2009 4:46    FHFMedStaffOffice        386 586 4249         p.3


FLORIDA HOSPITAL
*Flagler*

**Medical Staff Office**
**60 Memorial Medical Parkway**
**Palm Coast, FL 32164**
**Telephone 386-586-4243**
**Fax 386-586-4249**

Page 2 of 2

III.  CORRECTIVE ACTION
Has the practitioner ever been subjected to any disciplinary action, such as admonition, reprimand, suspension, or termination?      YES____    NO__X__

If yes, please give details in item V or on a separate sheet of paper.

IV.  RECOMMENDATIONS (Circle One)
   A. Recommend highly without reservation
   B. Recommend as qualified and competent
   Ⓒ Recommend with some reservation
   D. Do not Recommend

V.  COMMENTS
(Notable strengths and weaknesses or explanation of above answers)
_____
_____
_____

VI.  Current Competency
Upon review of the applicant's Privilege List, it is my belief that the applicant is qualified to undertake the privileges requested with reasonable accommodation.

   YES____    NO____

If no, please comment_____
_____
_____

Since prompt action on this application is required, you may fax this response to 386-586-4249. If you have any questions, please contact me at 386-586-4243.

Sincerely,

*Donna McFee*

Donna McFee, CPCS
Medical Staff Manager

**PLEASE COMPLETE THE FOLLOWING:**

_____     _____
Print                        Signature

_____     _____
Date                         Title

Telephone number and best time to call: _____

Feb 19 2009 4:46     FHFMedStaffOffice              386 586 4249                p.4

## FLORIDA HOSPITAL FLAGLER
### DELINEATION OF CLINICAL PRIVILEGES

**DEPARTMENT** SURGERY    **SUBSECTION** ANESTHESIOLOGY
**PHYSICIAN** Sarah Bronson MD    **DATE** 11/25/08

I hereby request full privileges in ANESTHESIOLOGY as indicated below:

**YES**   **NO**

✓ ___   I. General Anesthesia

   II. Regional Anesthesia as specified:
✓ ___        A. Epidural
✓ ___        B. Spinal, including "Saddle Block"
✓ ___        C. Peripheral nerve block - Axillary Block; Bier Block
___ ✓        D. Sympathetic nerve block - Diagnostic & Therapeutic

   III. Associated Areas of Interest
✓ ___        A. O.R./R.R. Supervision
✓ ___        B. Respiratory Therapy Supervision
✓ ___        C. Intensive Care Supervision

   IV. Special Techniques
   (Physician desiring these privileges must be able to provide evidence of experience or training in these areas).
___ ✓        A. Ablative Nerve Block
✓ ___        B. Hypothermia
✓ ___        C. Deliberate Hypotension
✓ ___        D. Cardiopulmonary Bypass

✓ ___   V. Conscious Analgesia


11/25/08                    [signature]
_____                   _____
Date                        Physician's Signature


_____                   _____
Date                        John Walsh, MD, Chair, Department of Surgery


revised: 11/96
retyped: 4/98
retyped: 5/08
revised 6/08
revised 7/08

X:\MMEDSTAFF\Privilege Forms Current\Medical Staff Office\Delineation of Privileges _ Current\Anesthesia - Flagler.doc

 

**FLORIDA HOSPITAL**
*Flagler*

## INFORMATION RELEASE/ACKNOWLEDGMENTS AGREEMENT

I fully understand that any significant misstatements in or omissions from this appointment application constitute cause for denial of appointment or cause for summary dismissal from the Medical Staff. All information submitted by me in this application is true to the best of my knowledge and belief.

In making this application for appointment to the Medical Staff of this hospital, I acknowledge that I have received and read the Bylaws and Rules and Regulations of the Medical Staff of this hospital, and a description of the appointment process. I am familiar with the principles and standards of the Joint Commission on Accreditation of Healthcare Organizations, the guiding principles for physician-hospital relationships of the state medical association and the principles of ethics of the American Medical Association, the American Osteopathic Association, the American Podiatry Association, or the American Dental Association, and I agree to be bound by the terms thereof if I am granted membership or clinical privileges. I further agree to be bound by the terms thereof without regard to whether or not I am granted membership or clinical privileges in all matters relating to the consideration of my application for appointment to the Medical Staff, and as may be from time to time enacted.

By applying for appointment to the Medical Staff, I hereby signify my willingness to appear for the interviews in regard to my application, authorize the hospital, its Medical Staff and their representatives to consult with administrators and members of Medical Staffs of other hospitals or institutions who may have information bearing on my professional competence, character, and ethical qualifications. I hereby further consent to the inspection by the Hospital, its Medical Staff and its representative of all records and documents, including medical records at other hospitals that may be material to an evaluation of my professional qualifications and competence to carry out the clinical privileges requested, as well as my moral and ethical qualifications for staff membership. I hereby release from liability all representatives of the Hospital and its Medical Staff for their acts performed in good faith and without malice in connection with evaluating my application and my credentials and qualifications, and I hereby release from any liability any and all individuals and organizations who provide information to the Hospital, or its Medical Staff, in good faith and without malice concerning my professional competence, ethics, character and other qualifications for Staff appointment and clinical privileges and I hereby consent to the release of such information.

I hereby further authorize and consent to the release of information by this Hospital, or its Medical Staff, to other hospitals, medical associations, or request regarding any information the hospital and the Medical Staff may have concerning me as long as such release of information is done in good faith and without malice; provided that if I am a current member of the Medical Staff, I will receive 10 days notice that my records have been requested and will have the opportunity to contest the release of my medical records unless required by law or the Medical Staff Bylaws; and I hereby release from liability this hospital and its Medical Staff for so doing.

I understand and agree that I, as an applicant for Medical Staff membership, have the burden of producing adequate information for proper evaluation of my professional competence, character, ethics and other qualifications and for resolving any doubts about such qualifications.

I pledge to provide for the continuous care of my patients. I will not participate in any form of fee-splitting. Moreover, I pledge myself to shun unwarranted publicity, dishonest money-seeking, and commercialism, to refuse money trades with consultants, practitioners, makers of surgical appliances and optical instruments, or others; to make my fees commensurate with the service rendered and with the patient's rights; and to avoid discrediting my associates by taking unwarranted compensation.

By accepting appointment/reappointment to the Medical Staff, I agree to assume all the functions and duties of membership including specifically, and where applicable, care for unassigned patients, emergency call coverage and consultation. I understand it is the responsibility of the physician on the emergency room call schedule to communicate, as necessary, any change in the hospital call coverage schedule.

I have not requested privileges for any procedures for which I am not qualified. Furthermore, I realize that certification by a Board does not necessarily qualify me to perform certain procedures. However, I believe that I am qualified to perform all procedures for which I have requested privileges.

_11/26/08_        _[signature]_
DATE              SIGNATURE

Physician Application
Revised 7/2008                                                      Page 7 of 18

To: Emily Vasiliou
ACGME Resident Services
515 N. State St., Suite 2000
Chicago, IL 60654

From: Sarah Aronson, MD
CA-3, Dept of Anesthesiology
UH Case Medical Center
Cleveland OH

Re: Due Process

10 April 2009

Ms. Vasiliou:

I am writing to communicate a formal complaint regarding my hospital's existing policies and my residency program's handling of my performance review.

I understand that your office does not intervene in the specifics of the evaluation process or the decisions made regarding promotion.

The concerns I am presenting for your review include lack of documentation, lack of timely intervention and communication of performance concerns, and lack of access to mediation or appeal. It is my hope that the involvement of your office will improve the current process and allow me access to a due process review.

Specifically, I am concerned that:
1. My program directors came to a decision to extend my training by 6 months without any documentation or clear examples of deficiencies in performance during the period in question.



ARON 0025

- 2 -

2. I was presented with this decision less than 2 months before the scheduled end date of my residency, though the alleged period of unsatisfactory performance occurred over 3 months prior.
3. Hospital policy states that no appeal is available to a resident who is not promoted or whose training is extended for academic reasons.
4. My program directors abused their supervisory authority by mandating a fitness-for-duty evaluation without any documentation or examples of irregular performance, and in the face of documentation of very good performance during the preceding months.

The relevant ACGME guidelines are as follows:

(1) Non-renewal of appointment or non-promotion: In instances where a resident's agreement will not be renewed, or when a resident will not be promoted to the next level of training, the Sponsoring Institution must ensure that its programs provide the resident(s) with a written notice of intent no later than four months prior to the end of the resident's current agreement. If the primary reason(s) for the non-renewal or non-promotion occurs within the four months prior to the end of the agreement, the Sponsoring Institution must ensure that its programs provide the resident(s) with as much written notice of the intent not to renew or not to promote as circumstances will reasonably allow, prior to the end of the agreement.

(2) Residents must be allowed to implement the insitution's grievance procedures if they receive a written notice either of intent not to renew their agreement(s) or of intent to renew their agreement(s) but not to promote them to the next level of training.

  e) Grievance procedures and due process: The Sponsoring Institution must provide residents with fair, reasonable, and readily available written institutional policies and procedures for grievance and due process. These policies and procedures must minimize conflict of interest by adjudicating parties in addressing:

   (1) Academic or other disciplinary actions taken against residents that could result in dismissal, non-renewal of a resident's agreement, non-promotion of a resident to the next level of training, or other actions that could significantly threaten a resident's intended career development.

- 3 -

Here are the events as I see them:

1. I was scheduled to complete my residency on 2/28/09. I am currently a CA-3 in Anesthesiology at University Hospitals Case Medical Center, 11100 Euclid Ave, Cleveland, OH 44106. Residency office phone (216) 844 7335. Program Director: Matthew Norcia, MD, Associate Program Director David Wallace, DO.

2. At a meeting in 10/08 both directors raised concerns regarding my speed and efficiency. This was an aspect of my practice that, on my own initiative, I had worked to improve during my CA-3 year. The evaluations my directors cited for those concerns predated 5/08, however, and I had reason to believe I had addressed those problems.

   I was called to that meeting after being on call all night in the SICU. We spent little time discussing my clinical performance. Dr. Wallace accused me of misusing the text page system to "dump" work on fellow residents on the OB service. I was confused, then alarmed, and ultimately offended by that accusation, and that occupied much of my attention during that meeting. I stated clearly that I do not dump work on my colleagues by whatever method, and it's not been mentioned to me again.

3. In early November, I signed an employment contract to start March 2, 2009, following my anticipated graduation. I obtained this job offer in part on the strength of Dr. Norcia's recommendation, dated September 2008 (attached), in which he described my ability as above average or excellent across the range of clinical duties I would be called upon to perform.

4. At a 6-week follow-up meeting at the end of November, I was informed by my program directors that I might receive an "unsatisfactory" for my last 6 months of residency (July 2008 – December 2008) though I had received only satisfactory to positive evaluations for that time period (attached). I have achieved good to excellent scores on the in-training exam every year in residency.

ARON 0027

- 4 -

5. At that meeting, I raised a question that perhaps the topiramate that I took for migraine prophylaxis was creating a response delay in me of which I was not aware. I suggested the option of involving the EAP in this process as an objective third party monitor, as I intended to stop the medication.

6. The following day, I was pulled from clinical duty and ordered by Dr. Wallace to undergo a Tier 1 "fitness-for-duty" evaluation citing concerns of substance abuse and/or cognitive impairment. No documentation was provided or substantive examples given to justify Tier 1 referral. When asked directly, Dr. Wallace could not give me an example of behavior or performance that would justify such an intervention. No other preliminary, less intrusive, interventions were offered or considered at any time, as are outlined in the Resident's and Fellows Manual or the UHCMC Policies and Procedures, nor was Dr. Norcia aware until several days later that this action had been taken. My faculty evaluation for that month was above average.

7. I discontinued the medication immediately, and complied fully and promptly with the mandated evaluation. No evidence of substance abuse or cognitive impairment was found.

8. Fitness-for-duty testing was completed December 4th. I had a final visit with evaluator on December 9, 2008, to review his report. Despite my calls to the program directors and the EAP liaison, no response or plan for return to work was offered to me until the evening of December 16th. During that period of time out of work, I was sufficiently alarmed by the delay in returning me to clinical duty that I consulted an attorney to clarify my options. At no time did I threaten legal action against the hospital or program.

9. I was scheduled many months in advance to go out on maternity leave December 22nd (my partner was pregnant and expecting our third child). As a result, I was given only 3 days in December to demonstrate my clinical performance. One of those days was with Dr. Norcia, who told me he had

ARON 0028

- 5 -

no significant criticisms of my performance and continued to have an "open mind" regarding the decision to extend my training. Roughly 2 weeks later on 12/31/08, while I was out on maternity leave and without any further assessment of my clinical ability, Dr. Norcia submitted his on line evaluation citing poor performance during the first week of October in the ICU. In that evaluation note, based on that week, he stated that he did not feel I was performing at the level of a CA-3 and should therefore repeat the 6 month block. I've not received at any time the specifics of any other performance concerns that may have been communicated to the program directors.

10. On January 7th, 7 weeks prior to my graduation date, I received written notice that the decision had been made to extend my training 6 months.

11. At the outset of this process, I was assured repeatedly by my program directors as well as by Dr. Jerry Shuck (DIO) and Will Rebello (GME manager) that I would have opportunity to appeal this decision. I am attaching the letter I drafted (but did not submit) 12/23/09 to request an appeal committee. When I reviewed the Resident's Manual, it clearly states that no appeal is allowed if the intervention is "academic" (see below). When I questioned this with the GME office and my program, I was then told that I had the following options: (1) accept the 6-month training extension without an appeal, or (2) refuse the extension, at which point I would be subject to a disciplinary action or termination without a certificate of completion, which I could then appeal, but with the caveat that I could then be terminated, and any disciplinary action would be reported to the state medical board.

12. I was in contact with the GME office repeatedly throughout this process. Mr. Rebello and Dr. Shuck were readily available to listen to my concerns. Mr. Rebello advised me at the beginning of this process that they could not be more active, because once I filed an appeal, Dr. Shuck would be called upon to mediate and would want to remain objective. When it became clear that no appeal was allowed (unless I invited a disciplinary action), Mr. Rebello told me that he really shouldn't be communicating with me at all

ARON 0029

- 6 -

because I had consulted an attorney. Dr. Shuck stated to me that he thought the way this had been handled by my program director was "unconscionable", but that "I think at this time I can't be seen as your advocate." He advised that I speak with Dr. Nearman, our department chairman. Dr. Nearman has deferred to the program directors' assessment in this case as he has delegated that responsibility to them. More recently, Dr. Shuck has had conversations with Dr. Nearman and the program directors, but this has not changed my status in any way.

In summary, the action on the part of my program regarding my performance was taken only 2 months before my graduation date, without any preceding remediation or intervention. I was formally notified that I would not be graduating on time 7 weeks prior to my completion date. Documentation of one instance of unsatisfactory clinical performance during this reporting period was entered almost 3 months after the fact.

Aside from Dr. Norcia's post-dated entry of 12/31/08, the last negative evaluations I received dated from the December 2007-July 2008 reporting period. As I mentioned above, I had taken initiative myself to address and correct the concerns expressed at that time, and the evaluations I have received since May of 2008 has been satisfactory to excellent. Had my program directors taken some action with me then, one year ago, it would have allowed me the subsequent 6 month period to demonstrate my competency, and, according to the American Board of Anesthesiology requirements, I would not have been subject to this training extension (see below). My own educational experience could have been improved, and serious professional consequences to me could have been avoided.

In addition, my program directors have not explained why, if my performance was so concerning in early October to justify a fitness-for-duty evaluation, I was kept on duty through October and November. During that time I supervised a very busy ICU service, and subsequently a very busy Acute Pain/Regional Anesthesia service, during which I received good evaluations.

The ACGME guidelines require that residents "must be allowed to implement the institution's grievance procedures if they receive a written notice either of intent not to

ARON 0030

- 7 -

renew their agreement(s) or of intent to renew their agreement(s) but not to promote them to the next level of training". Our GME manager and our DIO both declined initially to mediate in this process despite my repeated communication to their office of my concerns, advising that I seek an appeal if I received an adverse action. Only later in the process (after I reviewed the hospital by-laws myself) was I told I had no option of seeking a review or appeal unless I chose to invite a disciplinary action, placing myself at greater professional risk.

From the beginning of this process, I responded promptly and concretely, in good faith, to correct any possible deficiencies in my performance. My file will show that I have communicated with my supervisors, my chairman, and the GME office from the outset, expressing my concerns as well as my willingness to develop a mutually acceptable plan of action. This has produced little response other than the continued execution of a remediation plan with severe personal and professional consequences for me, the basis for which remains vague. My evaluations from faculty who work with me have been and continue to be good.

Both Dr. Shuck and Dr. Nearman agree that I have exhausted the options for reaching an internal resolution of this situation. They are aware that I am submitting this complaint to you.

I appreciate your review of these concerns and look forward to hearing your suggestions. Thank you for your attention to this matter.

Sincerely,

Sarah Aronson, MD
UHCMC/Case School of Medicine
Home phone: (216) 721 5945
Email: sarah.aronson@uhhospitals.org
Page: 31262@pager.uhhospitals.org

ARON 0031

- 8 -

## Current UH Resident Policy:

"A Performance Review Action is an opportunity for the Resident to address expected standards that need improvement. A Performance Review Action is not reportable to the State of Ohio Medical Board; it is not a Disciplinary Action (defined on next page); it cannot be appealed; and it becomes part of the Resident's permanent file.

1. Performance Alert Notice. A Performance Alert Notice is the formal written notification to a Resident concerning areas of marginal or unsatisfactory performance. The Program Director or Faculty Member should initiate a Performance Alert Notice and inform the resident within 7-10 days of identifying an area of concern.
2. Remediation. A remediation period is an opportunity for the resident to correct academic deficiencies and to develop and demonstrate appropriate levels of proficiency for patient care and advancement in the program. Being placed in remediation is notice to the resident of his or her failure to progress satisfactorily as reflected by evaluations and/or other assessment modalities. It is not to be used in lieu of a Disciplinary Action.

Remediation may include, but is not limited to, one or more of the following:

1) Limitations or restrictions on the amount and level of the Resident's patient care activities;

2) Repeating one or more rotations;

3) Participation in a special program;

4) Continuing scheduled rotations with or without special conditions;

5) Supplemental reading assignments;

6) Attending undergraduate or graduate courses and/or additional clinics or rounds;

7) Extending the period of training;

8) Referral to the Employee Assistance Program (see UHCMC Policy HR-85 which shall apply to all aspects of the referral, process and determination); and/or

9) Repeat training year.

- 9 -

Hospital EAP policy:

4.2.1 Tier 1 Mandatory Referral - Employees may be mandated to attend EAP by their supervisor for the following:

(1) Impaired functioning (fit for duty); or

(2) Violent, hostile, or reckless behavior that endangers the safety of employees, visitors, patients or physicians or that causes others to fear for his/her safety; or

(3) Reasonable suspicion of alcohol/drug use.

The American Board of Anesthesiology requirements:

2. The period of clinical anesthesia training as an enrolled resident of any single program is at least six months of uninterrupted training.

3. The six-month period of clinical anesthesia training in any one program ends with receipt of a satisfactory Certificate of Clinical Competence. To receive credit from the ABA for a period of clinical anesthesia training that is not satisfactory, the resident must immediately complete an additional six months of uninterrupted clinical anesthesia training in the same program with receipt of a satisfactory Certificate of Clinical Competence…When a resident receives a satisfactory Certificate of Clinical Competence…the ABA will grant credit…for the period of satisfactory training and the most recent of the periods of unsatisfactory training immediately preceding it.

ARON 0033

The Federation of State Medical Boards of the United States, Inc.
**Federation Credentials Verification Service**
P.O. Box 619850
Dallas, TX 75261-9850
Telephone: (817) 868-5000
FAX: (817) 868-4106
**PLEASE EMAIL YOUR RESPONSE TO: SHYDE@FSMB.ORG**

June 24, 2009

Attn: Program Director
University Hospitals of Cleveland
Department of Anesthesiology
11100 Euclid Avenue
Cleveland OH 44106-5007

RE:  Name:  Sarah Cymry Aronson, MD
     Date Of Birth:  01/10/1962
     Dates of Attendance:  03/2006 to 09/2009

The above referenced physician has retained the Federation Credentials Verification Service (FCVS) to verify his/her postgraduate training information directly with your institution for purposes of state medical licensure. To facilitate this request, we ask that you:

Have the Program Director of your postgraduate training program complete the attached required **Verification of Postgraduate Medical Education** form; and,

If the training program is **Rotating or Transitional**, provide a schedule that indicates such rotations and time spent in each department.

For purposes of determining eligibility for state medical licensure, **training must be reported in yearly increments (i.e. demonstrating start and completion dates for each year of training)**. Please do not report information regarding other departments at your institution. State medical boards require that all training be verified by the supervising (or current) program director for each department in which training was conducted.

You may complete and return this form in either of the following formats: Complete all of the required fields in the fillable form attached. Return the form and all documents requested to the email address below. If completed correctly, this document will be considered primary source verification.

Or complete the form, print, affix your institutional seal and an authorized signature. Then return the hard copy form and all documents requested via regular mail to the address listed on the verification form.

If you have any questions, please call at 1-888-ASK-FCVS (1-888-275-3287) or email at fcvsforms@fsmb.org.

Sincerely,
Federation Credentials Verification Services


DEFENDANT'S EXHIBIT FF



## Affidavit and Release
## and Authorization for Release of Information, Documents and Records

I, the undersigned, being duly sworn, hereby certify under oath that I am the person named in this application, that all statements I have or shall make with respect thereto are true, that I am the original and lawful possessor and person named in the various forms and credentials furnished or to be furnished with respect to my application and that all documents, forms or copies thereof furnished or to be furnished with respect to my application are strictly true in every aspect.

I acknowledge that I have read and understand the "Instructions for Completing the FCVS Application" and have answered all questions contained in the application truthfully and completely. I further acknowledge that failure on my part to answer questions truthfully and completely may lead to my being prosecuted under appropriate federal and state law.

I waive confidentiality, authorize and request every person, hospital, clinic, government agency (local, state, federal or foreign), court, association, institution or law enforcement agency having custody or control of any documents, records and other information pertaining to me to furnish to the Federation Credentials Verification Service (FCVS) any such information, including documents, records regarding charges or complaints filed against me, formal or informal, pending or closed, my examination grades, or any other pertinent data and to permit FCVS or any of its agents or representatives to inspect and make copies of such documents, records, and other information in connection with this application that can subsequently be provided to professional licensing boards, hospitals and other entities when I apply for licensure, staff membership, employment or other privileges.

I hereby release, discharge and exonerate FCVS, its agents or representatives and any person, hospital, clinic, government agency (local, state, federal or foreign), court, association, institution or law enforcement agency having custody or control of any documents, records and other information pertaining to me of any and all liability of every nature and kind arising out of investigation made by FCVS.

I will immediately notify FCVS in writing of any changes to the answers to any questions contained in this application if such a change occurs at any time prior to my FCVS Physician Information Profile being mailed.

Applicant's Signature (must be signed in the presence of a notary)

Applicant's Printed Last Name: AVIDNSON

Applicant's Printed First Name, Middle (initial), and Suffix (e.g. Jr): SARAH C

Date of Signature: 5/15/09     Date of Birth: 01/10/1962

Applicant SSN: 036400223

### NOTARY

Your seal or stamp must be partly upon the photograph

State of: Ohio     County of: Cuyahoga

SUBSCRIBED AND SWORN TO before me this 15th day of May 2009

My commission expires: 02-26-2011

Bernette E. Fisher
Notary Public, State of Ohio
My Commission Expires 02-26-2011

(NOTARY PUBLIC SIGNATURE & SEAL)
Notary Public signature:

I certify that on the date set forth above, the individual named above did appear personally before me and that I did identify this applicant by (a) comparing his/her physical appearance with the photograph on the identifying document presented by the applicant and with the photograph affixed hereto, and (b) comparing the applicant's signature made in my presence on this form with the signature on his/her identifying document.

Federation Credentials Verification Service