---------- Forwarded message ----------
From: Aronson, Sarah <Sarah.Aronson@uhhospitals.org>
Date: Aug 27, 2009 12:50 PM
Subject: FW: paperwork
To: drsa5555@gmail.com

**
**

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*


----------------------------
*From:* Norcia, Matthew
*Sent:* Thu 8/27/2009 12:09
*To:* Aronson, Sarah
*Cc:* Nearman, Howard; Shuck, Jerry; Wallace, David; Rowbottom, James
*Subject:* RE: paperwork


  At this time I am not able to immediately investgate this matter. I did
discuss the situation briefly with Dr Rowbottom and asked him to permanently
relieve you if he is able. I will get back to you when appropriate.

  Matt

----------------------------
*From:* Aronson, Sarah
*Sent:* Thu 8/27/2009 11:02 AM
*To:* Norcia, Matthew; Nearman, Howard
*Cc:* Shuck, Jerry; Wallace, David; Rowbottom, James; mmiller@acgme.org
*Subject:* RE: paperwork


  *According to Holly at the ABA - (919) 881 2570 - I completed all
requirements as of the end of June.  According to her, my satisfactory
completion of the Jan-June 2009 block recoups the 6 months lost from July
2008-Dec 2008, so in fact I was 4 months over my needed 36 months as of the
end of June 2009.*

*She suggests someone from the department call her if there are questions.*
**

*Sarah*
**
**

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*



-------------------------------
*From:* Norcia, Matthew
*Sent:* Thu 8/27/2009 07:20
*To:* Aronson, Sarah; Nearman, Howard
*Cc:* Shuck, Jerry; Wallace, David; Rowbottom, James
*Subject:* RE: paperwork


Sarah,

The ABA requires satisfactory completion of 12 months of basic clinical
training (not applicable to you at this point) and satisfactory completion
of a total of 36 months of clinical anesthesia training ( this is noted in
your training summary attachment). Your total of 36 months was anticipated
to be completed on Aug 31, 2009 to make up for the unsatisfactory 6 month
period July 08 to Dec 08. The ABA did not "automatically" designate you as
board eligible. We notified them at the end of their reporting cycle that we
anticipated that your completion date was within the cut off date for the
Aug 3-4 exam.They designated you as a candidate for board certification at
that time. Because your schedule is out of sync with the ABA reporting cycle
does not decrease the number of satisfactory months that you must complete.
Therefore you were not done 2 months ago,but you were determined to be a
candidate to sit for the exam 2 months ago.

As far as allowing you to leave early, that decision is up to the OR
coordinator (either Nearman or Rowbottom).

Matt

-------------------------------
*From:* Aronson, Sarah
*Sent:* Wednesday, August 26, 2009 9:34 PM
*To:* Aronson, Sarah; Norcia, Matthew; Nearman, Howard
*Cc:* Shuck, Jerry
*Subject:* RE: paperwork


 *It appears that the ABA has already automatically designated me as Board
Eligible as of July 1.  See attached; as they note, in August they post
updates based on the January to June reporting period.*
**
*Given that I apparently was done here 2 months ago, why don't you let me
leave now instead of having me work through this coming Monday?*
**
*I also would point out that I am scheduled to work a late duty tomorrow
night for no pay, to make up a half day I took off for an adoption court
appearance in August - when my tenure here should have already been over by
then.*
**
*I await your response.*
**
*SCA*

**
 *Sarah Aronson, MD*
*UHHS/Case School of Medicine*


-------------------------------
*From:* Aronson, Sarah
*Sent:* Tue 8/25/2009 11:59
*To:* Norcia, Matthew; Nearman, Howard
*Cc:* Shuck, Jerry
*Subject:* paperwork

*Subject:* paperwork


*Barbara Zuik tells me that the certificate has been forwarded to the department and only requires  your signatures (Norcia and Nearman).  I would like to have that completed so I can forward a copy by tomorrow.*
**
*I would like to have a copy of the letter to be submitted to the ABA by the end of this week as well.  I expect we all would prefer that I have all the paperwork in hand this week so I won't have to keep inquiring about it after I leave Monday.*
**
*I also have a question that just occurred to me recently.  Can you explain to me why I wasn't released to graduate at the end of June?  According to the ABA rules, a resident receives credit for an "unsatisfactory" 6 month block once a subsequent satisfactory 6-month block is completed.  In my case, you claimed my performance for July 2008 - December 2008 was void.  That block was not my "terminal" 6 month period; my "terminal" 6 month block would occur during January 2009 - June 2009.  *
**
*Once I completed the block of January 2009 - June 2009, I receive credit for the preceding 6 months and should have been done.  There's no rule that I can see that says one has to tack 6 months on to the end date, just that the last 6 months of training have to be satisfactory.  *
**
*SCA*
**
*Sarah Aronson, MD*
*UHHS/Case School of Medicine*


The six-month period of clinical anesthesia training in any one program ends with receipt of a satisfactory Certificate of Clinical Competence. *To receive credit* from the ABA for a period of clinical anesthesia training that is not satisfactory, the resident must immediately complete an additional six months of uninterrupted clinical anesthesia training in the same program with receipt of a satisfactory Certificate of Clinical Competence.
If a resident receives *consecutive* Certificates of Clinical Competence that are not satisfactory, additional training is required.

Visit us at www.UHhospitals.org <http://www.uhhospitals.org/>.

The enclosed information is STRICTLY CONFIDENTIAL and is intended for the use of the addressee only. University Hospitals and its affiliates disclaim any responsibility for unauthorized disclosure of this information to anyone other than the addressee.

Federal and Ohio law protect patient medical information, including psychiatric_disorders, (H.I.V) test results, A.I.Ds-related conditions, alcohol, and/or drug_dependence or abuse disclosed in this email. Federal regulation (42 CFR Part 2) and Ohio Revised Code section 5122.31 and 3701.243 prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

--
Sarah Aronson, MD
UHCMC/Case School of Medicine

**Glossary of Terms Related to Resident Duty Hours**
To be inserted into the
*"Glossary of Selected Terms Used in GME Accreditation"*

*Continuous time on duty:*   The period that a resident is in the hospital continuously, counting the residents regular scheduled day, time on call, and the hours residents remain on duty after the end of the on-call period to transfer the care of the patient and for didactic activities.

*Duty hours:* All required and formal elective time in the residency program, including (1) patient care activities that meet educational objectives, including time spent in patient are, on inpatient call and time required for transferring the care of the patient; (2) patient care activities necessary to acquire and maintain skills and to meet patient care demands; and (3) didactic activities, such as conferences, grand rounds and one-on-one and group learning in clinical settings.

*Home call (pager call):* Scheduled patient care assignments beyond the normal work day that are taken from outside the assigned institution.  It generally involves residents providing coverage to a population of patients from their home, with the expectation that they may need to come into the hospital upon being called, or via the telephone direct junior residents or other health professionals in providing patient care.

*In-hospital call:* Scheduled patient care assignments beyond the normal workday where residents are required to be immediately available in the assigned institution (generally from evening until the next morning).

*Moonlighting:*  Patient care activities external to the educational program that residents engage in at sites used by the educational program ("in-house" moonlighting) and other clinical sites.

8/15/02   G:\dhimplementation\glossarydh.doc



You replied on 5/6/2009 12:03.

The sender of this message has requested a read receipt. Click here to send a receipt.

Aronson, Sarah

| From: | Coneglio, Kitty | Sent: | Wed 5/6/2009 11:10 |
| To: | Aronson, Sarah; Wallace, David | | |
| Cc: | | | |
| Subject: | RE: question | | |
| Attachments: | | | |

Hi Dr. Aronson,

I spoke with Chris, and she said that she referred your question to Dr. Wallace and that he had planned to address this with you at your meeting.  Therefore, I am including Dr. Wallace on this email.

Kitty Coneglio, Assistant to Dr. Howard Nearman
Chairman of the Department of Anesthesiology
 and Perioperative Medicine
University Hospitals Case Medical Center
Case School of Medicine
11100 Euclid Avenue
Cleveland, Ohio  44106-5007
Telephone: 216/844-7330, Fax: 216/844-3781
Email: kitty.coneglio@uhhospitals.org

-----Original Message-----
From: Aronson, Sarah
Sent: Wednesday, May 06, 2009 10:39 AM
To: Coneglio, Kitty
Subject: FW: question

hi, I haven't gotten an answer to this question- can you tell me  who sits on the committee and who the chair is?
thanks -

Sarah Aronson, MD
UHHS/Case School of Medicine

-----Original Message-----
From: Aronson, Sarah
Sent: Sun 4/26/2009 10:06
To: Adamovich, Christine
Subject: FW: question

Sarah Aronson, MD
UHHS/Case School of Medicine

From: Aronson, Sarah
Sent: Sun 4/12/2009 00:02
To: Adamovich, Christine



EXHIBIT

27

MP 12-23-10

ARON 0178

Subject: question

Who chairs our clinical competence committee?

Sarah Aronson, MD
UHHS/Case School of Medicine

ARON 0179

2003 ABA/ASA In-Training Examination

## Personal Performance Report

**Name:** Aronson, Sarah          **Training Program:** 140015          **ID Number:** 0035862786

Your performance on the In-Training examination is reported as a scaled score. For more information about your In-Training examination score and to compare your performance with other residents, refer to the "Guidelines for Interpreting Your Personal Performance Report."

Your scaled score is: 38

To help you evaluate your performance in various content areas measured by the ITE, the number of questions answered correctly for each content area is listed below.

Also listed below are the percentile scores for your reference group for 3 points: the 50th percentile, the 75th percentile, and the 90th percentile. You can compare your score to the percentile scores to find out where your performance falls relative to your reference group.

| Category | # of Questions | # Answered Correctly | 50%-ile | 75%-ile | 90%-ile |
|---|---|---|---|---|---|
| Anatomy | 7 | 7 | 4 | 5 | 6 |
| Mathematics, Statistics, Computers | 5 | 5 | 5 | 5 | 5 |
| Organ-based Clinical: Cardiovascular | 15 | 10 | 10 | 11 | 12 |
| Organ-based Clinical: Endocrine/Metabolic | 8 | 5 | 6 | 6 | 6 |
| Organ-based Clinical: Hematologic | 8 | 8 | 7 | 7 | 8 |
| Organ-based Clinical: Neurologic and Neuromuscular | 11 | 9 | 8 | 9 | 10 |
| Organ-based Clinical: Respiratory | 11 | 7 | 7 | 8 | 9 |
| Organ-based Clinical: Renal/Urinary/Electrolytes | 7 | 5 | 5 | 5 | 6 |
| Pharmacology | 33 | 24 | 23 | 25 | 27 |
| Physics, Monitoring, & Anesthesia Delivery Devices | 7 | 4 | 4 | 5 | 6 |
| Physiology | 16 | 6 | 10 | 12 | 13 |
| Subspecialties: Regional Anesthesia | 6 | 5 | 5 | 5 | 6 |
| Subspecialties: Critical Care | 15 | 11 | 11 | 12 | 13 |
| Subspecialties: Obstetric | 13 | 8 | 8 | 10 | 11 |
| Subspecialties: Pain | 13 | 10 | 9 | 10 | 11 |
| Subspecialties: Pediatrics | 9 | 7 | 6 | 7 | 7 |
| "Generic" Clinical Sciences: Anesthesia Procedures, Methods, Techniques | 39 | 34 | 28 | 31 | 32 |


THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
28
MO 12-23-10
CLEVELAND, OHIO 44102-1700

ARON 0136

# AMERICAN BOARD OF ANESTHESIOLOGY
## 2008 ABA/ASA In-Training Examination

## Personal Performance Report

**Name:** Aronson, Sarah          **ID Number:** 0035862786

Your performance on the In-Training examination is reported as a scaled score. For more information about your In-Training examination score and to compare your performance with other residents, refer to the "Guidelines for Interpreting Your Personal Performance Report."

**Your scaled score is: 33**

To help you evaluate your performance in various content areas measured by the ITE, the # of questions answered correctly for each content area is listed below.

Also listed below are the percentile scores for your reference group for 3 points: the 50th percentile, the 75th percentile, and the 90th percentile. You can compare your score to the percentile scores to find out where your performance falls relative to your reference group.

| Category | # of Questions | # Answered Correctly | 50% | 75% | 90% |
|---|---|---|---|---|---|
| "Generic" Clinical Sciences: Anesthesia Procedures, Methods, Techniques | 37 | 24 | 25 | 27 | 29 |
| Anatomy | 13 | 11 | 8 | 9 | 11 |
| Mathematics, Statistics, Computers | 5 | 4 | 4 | 4 | 5 |
| Organ-based clinical: Hematologic | 12 | 8 | 7 | 8 | 9 |
| Organ-based clinical: Respiratory | 26 | 16 | 18 | 20 | 22 |
| Organ-based clinical: Cardiovascular | 18 | 17 | 12 | 13 | 14 |
| Organ-based clinical: Endocrine/metabolic | 8 | 7 | 6 | 7 | 7 |
| Organ-based clinical: Neuromuscular Diseases & Disorders | 14 | 8 | 10 | 11 | 12 |
| Organ-based clinical: Renal/Urinary/Electrolytes | 4 | 2 | 2 | 3 | 3 |
| Pharmacology | 54 | 41 | 35 | 39 | 42 |
| Physics, Monitoring, & Anesthesia Delivery Devices | 17 | 11 | 10 | 11 | 12 |
| Physiology | 20 | 11 | 12 | 14 | 15 |
| Regional | 17 | 11 | 11 | 13 | 15 |
| Subspecialties: Critical Care | 13 | 9 | 9 | 10 | 11 |
| Subspecialties: Obstetric | 15 | 13 | 11 | 12 | 13 |
| Subspecialties: Pain | 18 | 17 | 13 | 15 | 15 |
| Subspecialties: Pediatrics | 18 | 9 | 11 | 13 | 14 |


THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
29

ARON 0135

2007 ABA/ASA In-Training Examination

### Personal Performance Report

Name:  Aronson Sarah Cymry

ID Number:   A35862786

Training Program Number:  140015

Your performance on the In-Training examination is reported as a scaled score. For more information about your In-Training examination score and to compare your performance with other residents, refer to the "Guidelines for Interpreting Your Personal Performance Report."

Your scaled score is: 34

To help you evaluate your performance in various content areas measured by the ITE, your scaled scores for each content area are listed below.  You may compare your scaled scores across content areas and with your total ITE score above to find areas of strength and weakness, as they are all on the same scale.

Also listed below are the mean and standard deviation (in parentheses) of scores obtained by the reference group candidates taking the ITE in each content area.  You can compare your score to that mean score to find out where your performance falls relative to the reference group candidates (AMG CA-3 ABA candidates taking the examination for the first time for certification).

| | Your Scaled Score | Reference Group Mean Scaled Score (SD) |
|---|---|---|
| Anatomy | 37 | 38 (9) |
| Anesthesia Processes | 34 | 37 (5) |
| Cardiovascular | 39 | 37 (7) |
| Hematology | 30 | 39 (10) |
| Mathematics, Statistics, and Computer | 41 | 38 (12) |
| Neurologic | 39 | 39 (10) |
| Obstetrics and Gynecology | 43 | 39 (9) |
| Pain | 42 | 39 (10) |
| Pediatrics | 32 | 38 (9) |
| Pharmacology | 34 | 38 (6) |
| Physics Equipment | 23 | 38 (8) |
| Physiology | 33 | 38 (7) |
| Regional Anesthesia | 39 | 38 (8) |
| Respiratory | 28 | 38 (7) |



THE OHIO LEGAL BLANK CO. INC.

EXHIBIT
30
M.D. 1223-10
CLEVELAND, OHIO  44107-1914

ARON 0137



**University Hospitals**
Case Medical Center

November 24, 2008

Memo Re:    Sarah C. Aronson

On October 14, 2008, Dr. Wallace and I met with Dr. Aronson to discuss her clinical performance. Multiple unsatisfactory evaluations had been received and since we had met earlier in Dr. Aronson's residency about performance issues, we thought it was necessary to revisit this area.

Of primary concern was the lack of appropriately rapid response (verbally or physically) to events that occur in the OR. Evaluation concerns are that Dr. Aronson is not appreciating the situation or cannot process and react to the information or situation at hand. She also had concerning evaluations from her Pain, OB, and ICU rotations.

This was explained to Dr. Aronson. She responded that she could not identify the reason for delay in response. Because of her inability to identify the problem, she was told that if she does not perceive the problem or identify the problem, then there is no way to correct the problem.

Dr. Wallace and I discussed some ways to improve and Dr. Aronson agreed to try. It was also discussed that the competency committee has reason to give her an "unsatisfactory" for her final 6 month period. We'll meet again in 4-6 weeks to review further evaluations and update any progress.

Respectfully,

Matthew P. Norcia, M.D.
Residency Program Director

David A. Wallace, D.O.
Residency Program Co-director

Sarah C. Aronson, M.D.

ARON 0008

Department of Anesthesiology and Perioperative Medicine
11100 Euclid Avenue Cleveland, Ohio 44106-5077 Phone 216-844-7335 FAX 216-844-3781
*University Hospitals Case Medical Center and Case Western Reserve University School of Medicine*

THE OHIO LEGAL BLANK CO., INC.
EXHIBIT
31
_TMP 12-23-10_

# Resident Comments
# All Evaluations

UNIVERSITY HOSPITALS
HEALTH SYSTEM
University Hospitals of Cleveland
DEPARTMENT OF ANESTHESIOLOGY

## UHC - Department of Anesthesiology

Print Report   Back to Menu

*Report Date Range:* 12/27/2007 - 10/13/2008

Report Date/Time: 10/13/2008 5:23:30 PM

---

**Comments**

**Aronson, Sarah (PGY - 3)** *CA3*



Irving Hirsch, Anesthesiology: she seems tentative in her decision making and actions, thus not allowing me to have confidence in her abilities.
**Resident Acknowledgement:** thank you. wouldn't say I felt tentative clinically, mainly not sure initially where to find things I needed. . I acknowledge receipt of this evaluation.
**Evaluator Acknowledgement:** Comments Not Available
**Program Director Comments:** Comments Not Available



Kathleen Cho, Anesthesiology: See other comments from today.

**Additional Comments:**
**Explanation for a score of 2 out of 5 for the Medical Knowledge:** Needs to think ahead and act quickly to prevent potential perioperative complications.

**Resident Acknowledgement:** thanks. I acknowledge receipt of this evaluation.
**Evaluator Acknowledgement:** Comments Not Available
**Program Director Comments:** Comments Not Available



Raymond Graber, Anesthesiology: During her TEE month, Sarah demonstrated that she was reading and learned alot during the rotation.
**Resident Acknowledgement:** thanks. I acknowledge receipt of this evaluation.
**Evaluator Acknowledgement:** Comments Not Available
**Program Director Comments:** Comments Not Available



Mark Zahniser, Anesthesiology: Strengths: Unable to acertain Weaknesses: Slow, unprepared, seems to have deficient knowledge of management of sick, complicated cases. Poor knowledge of equipment and its use. More interested in looking at the TEE than managing the actual patient.

**Additional Comments:**
**Explanation for a score of 2 out of 5 for the Medical Knowledge:** Patient was unstable, resident seemed unaware, more concerned with TEE.
**Explanation for a score of 1 out of 5 for the Medical Knowledge:** Did not notice problems when I left the room, seems unable to anticipate problems.
**Explanation for a score of 2 out of 5 for the Medical Knowledge:** Lack of effective care demonstrates this lack of useful knowlege.
**Explanation for a score of 2 out of 5 for the Patient Care:** *No comments provided*

**Resident Acknowledgement:** Comments Not Available
**Evaluator Acknowledgement:** Comments Not Available
**Confidential Comments:** Comments visible to program director only
**Program Director Comments:** Comments Not Available



James Rowbottom, Anesthesiology: thoughtful participation. Needs to expand to more total service perspective. May want to strat taking more responsibility for the whole service. Keep reading on ICU topics.
**Resident Acknowledgement:** thank you. I acknowledge receipt of this evaluation.
**Evaluator Acknowledgement:** Comments Not Available
**Program Director Comments:** Comments Not Available



Sarah is a very nice person, however she she has not made work her priority.

**Additional Comments:**
**Explanation for a score of 2 out of 5 for the Professionalism:** She was not punctual.

**Resident Acknowledgement:** Comments Not Available
**Evaluator Acknowledgement:** Comments Not Available

ARON 0225



EXHIBIT
32

Resident Comments

Program Director Comments: Comments Not Available

Matthew Norcia, Anesthesiology: Appears more comfortable and aggressive with clinical decision making and developing plans for difficult cases.
Resident Acknowledgement: Thank you, I appreciate your confidence. . I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Howard Nearman, Anesthesiology: There is no question that Sarah is extraordinarily bright and can do whatever she sets her mind to do. She can be a hard worker and is usually good with details. She often, although, gives the impression that her thought processes are elsewhere. She is a potential star - she just needs to focus more on the matters at hand.
Resident Acknowledgement: Thank you! I will certainly acknowledge that February was a distracting month for me for non-work-related reasons. I anticipate things will be a bit more settled -. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Matthew Norcia, Anesthesiology: I was not in the ICU on those dates
Resident Acknowledgement: I'm sure you stopped by to visit a few times -. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Gerald Jonsyn, Anesthesiology: Her overall performance was rather disappointing, definitely just below the level of her class. Her leadership and clinical skills and judgements were comparatively poor. She was neither reliable nor accountable and dependable during this rotation. She would disappear during work hours without any explanation, compromising patient care. When confronted with the facts of her questionable performance and behavior, she became evasive, argumentative and she offered only excuses. Therefore, it was very difficult to offer her positive directives for her personal improvement

Additional Comments:

Resident Acknowledgement: Dr Jonsyn and I have not yet had opportunity to discuss these issues, however, I agree there were significant difficulties with communication, for which I take some responsibility. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Confidential Comments: Comments visible to program director only
Program Director Comments: Comments Not Available

Evan Goodman, Anesthesiology: Fine job all around.
Resident Acknowledgement: Thanks very much for your confidence. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Susan Dumas, Anesthesiology: would have liked to see Sarah be a more active senior resident
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Lora Levin, Anesthesiology: Helpful with junior residents. Has a nice epidural/CSE technique. Now could work on speeding up her placements.
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Confidential Comments: Comments visible to program director only
Program Director Comments: Comments Not Available

Evan Goodman, Anesthesiology: Excellent job placing epidurals.
Resident Acknowledgement: Thank you -. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Barbara Dabb, Anesthesiology: Nothing to add
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Occasionally difficult to find her for help with patients when admitting for procedures or discharging patients.
Resident Acknowledgement: Comments Not Available
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Dr Aronsen was very pleasant to work with and had a great attitude.

ARON 0036
EXHIBIT

10/13/2008

Resident Acknowledgement: Comments Not Available
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Salim Hayek, Pain Management: Can improve in responsiveness and efficiency
Resident Acknowledgement: thanks -. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Confidential Comments: Comments visible to program director only
Program Director Comments: Comments Not Available

Patrick Mcintyre, Pain Management: I am happy with Dr. Aronson's performance. She developed a very nice rapport with most of the patients she saw in clinic. Dr. Aronson brings many years of experience in family medicine and psychiatry with her which is a nice background for the field of pain medicine.
Resident Acknowledgement: Thanks, it was a pleasure to work with you - I admire your balance of efficiency, clinical skill, and ability to communicate and connect with your patients. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Joshua Goldner, Pain Management: focus on problem at hand. efficiency could be improved.
Resident Acknowledgement: thanks. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

David Dininny, Anesthesiology: tnemmoc on
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Peter Adamek, Anesthesiology: biggest weakness is awareness of time and efficiency is and continues to be lacking. anesthesia is a team sport. we all depend on quick work that is also accurate. it is important during residency to practice speed while under supervision. I believe the adage 'it is hard to teach an old dog a new trick" applies. this anesthesia is on the other extreme of speed from family practice and psych. for example, when a patient is exsanginating from a ruptured spleen one most recognise this and act quickly. setting up the room completely and talking to the patient at length is not appropriate. decision making at times needs to be quick. anyway this is some things for you to practice this last year. good luck. peter.

Additional Comments:
Explanation for a score of 2 out of 5 for the Interpersonal and Communication Skills: unable to multitask in a timely manner.
Explanation for a score of 2 out of 5 for the Medical Knowledge: may be unable to realise patient is in bad shape, although this is difficult at times.
Explanation for a score of 2 out of 5 for the Medical Knowledge: like death due to bleeding out.
Explanation for a score of 2 out of 5 for the Medical Knowledge: ability to multitask while on call is in question.
Explanation for a score of 2 out of 5 for the Patient Care: see above, perhaps more trauma anesthesia cases would help all the residents as a group
Explanation for a score of 2 out of 5 for the Patient Care: see above
Explanation for a score of 2 out of 5 for the Professionalism: again multitasking is in need of help.

Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Confidential Comments: Comments visible to program director only
Program Director Comments: Comments Not Available

David Dininny, Anesthesiology: tnemmoc on
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Jeffrey Grass, Anesthesiology: Strong performance with some very challenging cases.
Resident Acknowledgement: thanks - interesting night - I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

David Dininny, Anesthesiology: tnemmoc on
Resident Acknowledgement: luoy knaht. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

David Dininny, Anesthesiology: tnemmoc on

ARON 0037

Resident Comments

Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Jeffrey Grass, Anesthesiology: Excellent job with very complex cases on a very busy call night.
Resident Acknowledgement: learned lots - good experience. thanks -. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Mark Zahniser, Anesthesiology: No comments.
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Confidential Comments: Comments visible to program director only
Program Director Comments: Comments Not Available

David Dininny, Anesthesiology: tnemmoc on
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

David Dininny, Anesthesiology: tnemmoc on
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

David Dininny, Anesthesiology: tnemmoc on
Resident Acknowledgement: thansk. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

David Dininny, Anesthesiology: tnemmoc on
Resident Acknowledgement: knaht uoy yrev hcum. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Sheryl Modlin, Anesthesiology: good day, very helpful
Resident Acknowledgement: thanks, I appreciate the opportunity -. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Barbara Dabb, Anesthesiology (Rotation: Anesthesia): no additional comments
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Great resident to work with. Attentive to detail and well informed about her patients.
Resident Acknowledgement: Comments Not Available
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Peter Matgouranis, Anesthesiology (Rotation: Anesthesia): Sarah shared responsibilities with CA1 and took on more
supervising roles
Resident Acknowledgement: thanks, always appreciate working with Dr Matgouranis. I acknowledge receipt of this
evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Michael Altose, Anesthesiology (Rotation: Anesthesia): Good work placing an epidural in a challenging patient with ease.
Resident Acknowledgement: thank you -. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Girish Mulgaokar, Anesthesiology (Rotation: Anesthesia): very good
Resident Acknowledgement: thank you. I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available
Program Director Comments: Comments Not Available

Jeffrey Grass, Anesthesiology (Rotation: Anesthesia): Ready to be an attending. Technical skills very much improved.
Resident Acknowledgement: Thank you -I, I acknowledge receipt of this evaluation.
Evaluator Acknowledgement: Comments Not Available

ARON 0038

MyEvaluations.com                                                                                    Page 1 of 4

Main | OnCall | MyPortfolio | Reports | Password | Logoff                    Monday, February 16, 2009

*Welcome, Dr. Sarah Aronson*

Main > Evaluations to Sign > Acknowledge

Acknowledge   More Information...

## OR/OB Faculty Evaluation Of Resident (V.2)

*Evaluation of Res*

*Resident Physician:*  Sarah Aronson
*Evaluation Period:*  11/01/2008 to 11/30/2008

*Evaluator:*  Subhalakshmi
*Rotation Name:*  Anesthesi:

### Core Competencies

**Interpersonal and Communication Skills**

| Demonstrates effective interpersonal and communication skills? | | | | |
|---|---|---|---|---|
| Performance not appropriate for level (remediate) 1 | Performance below average for level (feedback) 2 | Performance appropriate for level of training 3 | Performance above expected for level of training [4] | Performance exceptional, in top 5-10% of class 5 |
| 0 - No Interaction | | | | |

| Works effectively with others as a member or leader of a health care team? | | | | |
|---|---|---|---|---|
| Performance not appropriate for level (remediate) 1 | Performance below average for level (feedback) 2 | Performance appropriate for level of training 3 | Performance above expected for level of training [4] | Performance exceptional, in top 5-10% of class 5 |
| 0 - No Interaction | | | | |

**Medical Knowledge**

| Resident's understanding of the pharmacology? | | | | |
|---|---|---|---|---|
| Performance not appropriate for level (remediate) 1 | Performance below average for level (feedback) 2 | Performance appropriate for level of training [3] | Performance above expected for level of training 4 | Performance exceptional, in top 5-10% of class 5 |
| 0 - No Interaction | | | | |

| Resident's understanding of the patient's pathophysiology? | | | | |
|---|---|---|---|---|

ARON 0226

EXHIBIT
33

MyEvaluations.com

| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
|---|---|---|---|---|
| 1 | 2 | 3 | [4] | 5 |

0 - No Interaction

**Resident's awareness of potential perioperative complications?**

| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
|---|---|---|---|---|
| 1 | 2 | [3] | 4 | 5 |

0 - No Interaction

**Residents medical knowledge in this rotation specialty?**

| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
|---|---|---|---|---|
| 1 | 2 | 3 | [4] | 5 |

0 - No Interaction

## Patient Care

**Performs adequate Pre-op H & P with Documentation?**

| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
|---|---|---|---|---|
| 1 | 2 | 3 | [4] | 5 |

0 - No Interaction

**Generates and implements an acceptable Assessment and Plan?**

| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
|---|---|---|---|---|
| 1 | 2 | [3] | 4 | 5 |

0 - No Interaction

**Performs technical tasks as expected?**

| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
|---|---|---|---|---|
| 1 | 2 | 3 | [4] | 5 |

0 - No Interaction

**Resident demonstrated awareness of the indications, contraindications, complications, and anatomical considerations of invasive procedures?(e.g., Regional Anesthesia, A-line, Central Lines, TEE, F.O.B.)**

ARON 0227

| Performance not | Performance below | Performance | Performance above | Performance |
|---|---|---|---|---|

| appropriate for level (remediate) | average for level (feedback) | appropriate for level of training | expected for level of training | exceptional, in top 5-10% of class |
|---|---|---|---|---|
| 1 | 2 | 3 | [4] | 5 |

0 - No Interaction

## Professionalism

| Resident demonstrates sensitivity and respect for patient's culture, age, gender, and disabilities? | | | | |
|---|---|---|---|---|
| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
| 1 | 2 | 3 | [4] | 5 |

0 - No Interaction

| Resident accepts responsibility? | | | | |
|---|---|---|---|---|
| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
| 1 | 2 | [3] | 4 | 5 |

0 - No Interaction

| Resident writes comprehensive, legible, and timely in the medical record? | | | | |
|---|---|---|---|---|
| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
| 1 | 2 | 3 | [4] | 5 |

0 - No Interaction

| Resident demonstrates moral and ethical behavior? | | | | |
|---|---|---|---|---|
| Performance not appropriate for level (remediate) | Performance below average for level (feedback) | Performance appropriate for level of training | Performance above expected for level of training | Performance exceptional, in top 5-10% of class |
| 1 | 2 | [3] | 4 | 5 |

0 - No Interaction

## Evaluator Comments

good to work with. *I did not verbally discuss this evaluation with the resident face-to-face. Signed - Dr. Subhalakshmi Sivashankaran*

## Program Director Comments

Comments Not Available

## Acknowledgement Comments *(Provide feedback on the results of your evaluation)*

ARON 0228

4.2.1   <u>Tier 1 Mandatory Referral</u> - Employees may be mandated to attend EA by their supervisor for the following:

    (1)   Impaired functioning (fit for duty); or

    (2)   Violent, hostile, or reckless behavior that endangers the safety of employees, visitors, patients or physicians or that causes others to fear for his/her safety; or

    (3)   Reasonable suspicion of alcohol/drug use.

4.2.1.1 When an employee displays any of the above behaviors, all steps of the EA referral should be followed and the employee should be removed from the immediate work area. Return to work will be determined after the EA assessment including a substance abuse screening. Failure to comply with the EA referral within 24 hours will result in corrective action up to and including discharge.

4.2.1.1.1   The supervisor should contact EA prior to meeting with the employee to discuss the appropriateness of the referral. The supervisor will complete the EAP referral form (Attachment A). The EA assessment must occur within one business day after the Tier 1 Mandatory Referral.

4.2.1.1.2   The employee's supervisor is required to be involved in the Tier 1 mandatory referral process (e.g. coordinating, escorting or arranging transportation for an EAP intervention).

4.2.1.1.3   When an employee appears under the influence of drugs or alcohol while on the job or the supervisor has a reasonable suspicion of drug/alcohol use that is affecting job performance, UHHS policy mandates immediate testing at a UHHS approved site.

4.2.2   <u>Tier 2 Mandatory Referral</u> - Employees may be mandated to attend EA in circumstances where the supervisor has previously met with the employee due to one or more of the concerns:

    (1) Attendance issues.

    (2) Conflictive work relationship

    (3) Deteriorating job performance

4.2.2.1 The supervisor has counseled the employee, done a corrective action or performance improvement plan and there has been no measurable improvement in job performance. Prior to mandating the EA referral, the supervisor has <u>documented</u> counselings that



THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
334

ARON 0004

have demonstrated that the employee is aware of the job performance issue and has had opportunity to correct it.

4.2.2.2 The supervisor should contact EA prior to meeting with the employee to discuss the appropriateness of the referral. The supervisor will complete the EAP referral form (Attachment A).

4.2.2.3 The employee must contact EAP scheduling, at (216) 844-4948 within 5 business days of a Tier 2 Mandatory Referral to schedule a confidential appointment. Failure to comply with EA referral will result in corrective action up to and including discharge.

4.3 Critical Incident Referral: When employee(s) have been affected by a traumatic event at work or in the community, they may request the opportunity to meet with EAP. The request may be initiated by the employee, a supervisor, EAP, HR, or senior administration.

5  Confidentiality

5.1 Discussions between the EAP counselor and the employee are confidential and protected under Ohio law.

5.2 EAP cannot share any verbal or written information about the employee without the employee's prior written authorization.

5.3 The supervisor may only request feedback from EAP on attendance.

5.4 The employee will be monitored as determined by the EAP counselor or supervisor.

5.5 In a mandatory referral, EA will notify the employee, supervisor and HR of the date the employee is cleared for re-entry into the workplace (Return to Work Authorization form).

5.6 If either the supervisor, EA or HR determines that communication between and/or among them would be helpful in addressing the matter, a release of information signed by the employee is required.

5.7 Employees' EA records are maintained in a secure area and kept separate from personnel files and medical records.

ARON 0003

5.8 Information from EA may be shared without a release and authorization in response to state or federal statute/regulation (e.g. Homicidal/suicidal ideation; child and elder abuse/neglect), a court ordered subpoena or an official investigation by a government agency.  The employee will be notified if this should occur and an attempt will be made to obtain a release and authorization prior to the disclosure.

<u>Attachments:</u>
EAP Referral Form

<u>See Also:</u>
Your entity's policy on Substance Abuse Screening

| APPROVALS | |
|---|---|
| CHIEF EXECUTIVE OFFICER | Date |
| SENIOR VICE PRESIDENT | 6 -14-06 |
| | Date |

**Wallace, David**

| | |
|---|---|
| From: | Wallace, David |
| Sent: | Tuesday, November 25, 2008 10:15 AM |
| To: | Fulton-Royer, Jill |
| Subject: | RE: hr-85.pdf |

Jill,

Yesterday, Dr. Norcia and I met with Dr. Aronson and I asked her if she was on any psychotropic medication that might impair her performance because she has not made her 'Program Director' aware of any and she is required to do so.  She had a difficult time answering this question and finally admitted that she may be on some medication (that she thinks she has been on for at least 3 years) that may or may not impair her performance.

It has been difficult to determine if Dr. Aronson has a problem with cognitive processing, communicating her thoughts, and/or responding appropriately to information and circumstances around her.  She has a hard time to explain her inability to respond appropriately, and this delayed type response occurs both in clinical and not clinical situations.  Making decisions and responding to a changing environment and situations is necessary for the practice on anesthesia and critical care.  Her response mode during critical or emergency situations is difficult to contrast to her response to a routine situation.  She appears not to have a sense of urgency, ever.

From: Fulton-Royer, Jill
Sent: Tue 11/25/2008 8:43 AM
To: Wallace, David
Subject: hr-85.pdf

12/15/2008



# Attachment A

## UNIVERSITY HOSPITALS HEALTH SYSTEM
### EMPLOYEE ASSISTANCE PROGRAM REFERRAL FORM

Employee _Sarah C. Aronson_ Position: _Resident Physician_ Date: _11-25-08_ Phone _216-899-7335_

You are being referred to the EMPLOYEE ASSISTANCE PROGRAM (EAP) because of the concerns noted below. EAP services are confidential, in compliance with the law. Your supervisor will be told only whether you kept the appointment, and whether you complied with the EAP recommendations. Your supervisor will not be told what was discussed unless you specifically authorize it and sign a release of information specifying the information to be released. Information from EA may be shared without a release and authorization in response to state or federal statute/regulation (e.g. Homicidal/suicidal ideation; child and elder abuse/neglect), a court ordered subpoena or an official investigation by a government agency.

☑ A **Tier 1 Mandatory Referral** has been made to EAP for the following reason:

- ☐ Impaired functioning
- ☐ Violent, hostile, or reckless behavior that endangers the safety of others or that causes others to fear for their safety
- ☐ Reasonable suspicion of drug/alcohol use

Please phone EAP scheduling at 216-844-4948 to confirm your scheduled appointment on _____, _____ at _____
Day of Week    Date    Time

☐ A **Tier 2 Mandatory Referral** has been made to EAP for the following job performance concern(s):

- ☐ Attendance issues
- ☐ Conflictive work relationship
- ☐ Deteriorating job performance
- ☐ _____

_____
_____
_____
_____

Please phone EAP scheduling at 216-844-4948 **within 5 business days** of today's date, to schedule an appointment.

Explanation of counseling, anecdotal, corrective actions or other concerns relative to the above-checked concerns:

_Dr. Aronson needs an evaluation because of unsatisfactory performance in her clinical duties which includes a delay in cognitive processing and a delay or inability to respond appropriately in the clinical setting._

My supervisor has explained the reason for this EAP referral. I understand that my supervisor will be notified whether I keep my appointment and whether I comply with the EAP recommendations. I have been given a copy of this form.

Employee Signature: _____ Date: _11 / 25 / 08_

Supervisor Signature: _____ Department: _Anesthesiology_ Phone: _216-844-7335_

EAP Counselor Signature: _____ Date: _____

- ☐ Employee attended EAP session
- ☐ Employee complied
- ☐ did not attend EAP session
- ☐ did not comply

WHITE COPY – Employee        YELLOW COPY – Supervisor        PINK COPY – EAP Coordinator

EXHIBIT
36

ARON 0001



EXHIBIT
37
MP 12-23-10
CLEVELAND, OHIO 44102-9798



# University Hospitals
## Case Medical Center

Memo Re:    Sarah C. Aronson                    February 4, 2009

Dr. Wallace and I met with Dr. Aronson to discuss her current perspective and make plans for her next 6 month clinical schedule, for March 1, 2009 to August 31, 2009. We also compared schedules and are in agreement that Dr. Aronson has 2 days of vacation remaining through February 28, 2009. She will be entitled to an additional 10 days of vacation and 3 meeting days through August 31, 2009.

Dr. Aronson has agreed to a 6 month schedule that includes Cardiac/Thoracic, Vascular, Neuroanesthesia, ICU, Pediatrics, and an Elective month which she expressed an interest in doing TEE. Dr. Aronson and Dr. Wallace will decide the sequence of the rotations so that Dr. Aronson will get the best experience and to accommodate her schedule. Dr. Aronson missed her previously scheduled Metro Trauma rotation. We discussed that if she has 20 logged trauma cases, then it is her choice if she would like to incorporate the Metro Trauma rotation into her 6 month schedule.

Dr. Aronson requested if she could be excused to attend the Society of Cardiovascular Anesthesiologists Annual Meeting and Workshops from April 17 – 22, 2009. Even though this meeting occurs during the same time that the MARC 2009 conference is, we feel that if Dr. Rowbottom will approve it, it would be alright. She has tentatively signed up for these days in the Anesthesia Scheduling system.

Dr. Aronson was asked about her perspective on how she was performing. She generally felt her performance was adequate and improved, with the ability to increase the pace of her work. She said that she had requested feedback from Dr. Parks but that she has not heard anything yet. She was encouraged to request verbal feedback at the end of the day (so that it would be timely and interactive dialogue could be established.)

We decided that the three of us would meet on a monthly basis, around the middle of the month and on an as needed basis otherwise. Dr. Aronson will contact Christine Adamovich (216-844-7335) to arrange these meetings.


Respectfully,


Matthew P. Norcia, M.D.
Residency Program Director



David A. Wallace, D.O.
Residency Program Co-director



Sarah C. Aronson, M.D.

Department of Anesthesiology and Perioperative Medicine
11100 Euclid Avenue  Cleveland, Ohio 44106-5077  Phone 216-844-7335  FAX 216-844-3781
University Hospitals Case Medical Center and Case Western Reserve University School of Medicine

To:     Emily Vasiliou
        ACGME Resident Services
        515 N. State St., Suite 2000
        Chicago, IL  60654

From:  Sarah Aronson, MD
        CA-3, Dept of Anesthesiology
        UH Case Medical Center
        Cleveland OH

Re:     Due Process

10 April 2009

Ms. Vasiliou:

I am writing to communicate a formal complaint regarding my hospital's existing policies and my residency program's handling of my performance review.

I understand that your office does not intervene in the specifics of the evaluation process or the decisions made regarding promotion.

The concerns I am presenting for your review include lack of documentation, lack of timely intervention and communication of performance concerns, and lack of access to mediation or appeal.  It is my hope that the involvement of your office will improve the current process and allow me access to a due process review.

Specifically, I am concerned that:

1. My program directors came to a decision to extend my training by 6 months without any documentation or clear examples of deficiencies in performance during the period in question.



THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
38

ARON 0025

- 2 -

2. I was presented with this decision less than 2 months before the scheduled end date of my residency, though the alleged period of unsatisfactory performance occurred over 3 months prior.

3. Hospital policy states that no appeal is available to a resident who is not promoted or whose training is extended for academic reasons.

4. My program directors abused their supervisory authority by mandating a fitness-for-duty evaluation without any documentation or examples of irregular performance, and in the face of documentation of very good performance during the preceding months.

The relevant ACGME guidelines are as follows:

(1) Non-renewal of appointment or non-promotion: In instances where a resident's agreement will not be renewed, or when a resident will not be promoted to the next level of training, the Sponsoring Institution must ensure that its programs provide the resident(s) with a written notice of intent no later than four months prior to the end of the resident's current agreement. If the primary reason(s) for the non-renewal or non-promotion occurs within the four months prior to the end of the agreement, the Sponsoring Institution must ensure that its programs provide the resident(s) with as much written notice of the intent not to renew or not to promote as circumstances will reasonably allow, prior to the end of the agreement.

(2) Residents must be allowed to implement the institution's grievance procedures if they receive a written notice either of intent not to renew their agreement(s) or of intent to renew their agreement(s) but not to promote them to the next level of training.

e) Grievance procedures and due process: The Sponsoring Institution must provide residents with fair, reasonable, and readily available written institutional policies and procedures for grievance and due process. These policies and procedures must minimize conflict of interest by adjudicating parties in addressing:

(1) Academic or other disciplinary actions taken against residents that could result in dismissal, non-renewal of a resident's agreement, non-promotion of a resident to the next level of training, or other actions that could significantly threaten a resident's intended career development.

ARON 0026

- 3 -

Here are the events as I see them:

1.     I was scheduled to complete my residency on 2/28/09. I am currently a CA-3 in Anesthesiology at University Hospitals Case Medical Center, 11100 Euclid Ave, Cleveland, OH 44106. Residency office phone (216) 844 7335. Program Director: Matthew Norcia, MD, Associate Program Director David Wallace, DO.

2.     At a meeting in 10/08 both directors raised concerns regarding my speed and efficiency. This was an aspect of my practice that, on my own initiative, I had worked to improve during my CA-3 year. The evaluations my directors cited for those concerns predated 5/08, however, and I had reason to believe I had addressed those problems.

     I was called to that meeting after being on call all night in the SICU. We spent little time discussing my clinical performance. Dr. Wallace accused me of misusing the text page system to "dump" work on fellow residents on the OB service. I was confused, then alarmed, and ultimately offended by that accusation, and that occupied much of my attention during that meeting. I stated clearly that I do not dump work on my colleagues by whatever method, and it's not been mentioned to me again.

3.     In early November, I signed an employment contract to start March 2, 2009, following my anticipated graduation. I obtained this job offer in part on the strength of Dr. Norcia's recommendation, dated September 2008 (attached), in which he described my ability as above average or excellent across the range of clinical duties I would be called upon to perform.

4.     At a 6-week follow-up meeting at the end of November, I was informed by my program directors that I might receive an "unsatisfactory" for my last 6 months of residency (July 2008 – December 2008) though I had received only satisfactory to positive evaluations for that time period (attached). I have achieved good to excellent scores on the in-training exam every year in residency.

ARON 0027

- 4 -

5.    At that meeting, I raised a question that perhaps the topiramate that I took for migraine prophylaxis was creating a response delay in me of which I was not aware. I suggested the option of involving the EAP in this process as an objective third party monitor, as I intended to stop the medication.

6.    The following day, I was pulled from clinical duty and ordered by Dr. Wallace to undergo a Tier 1 "fitness-for-duty" evaluation citing concerns of substance abuse and/or cognitive impairment. No documentation was provided or substantive examples given to justify Tier 1 referral. When asked directly, Dr. Wallace could not give me an example of behavior or performance that would justify such an intervention. No other preliminary, less intrusive, interventions were offered or considered at any time, as are outlined in the Resident's and Fellows Manual or the UHCMC Policies and Procedures, nor was Dr. Norcia aware until several days later that this action had been taken. My faculty evaluation for that month was above average.

7.    I discontinued the medication immediately, and complied fully and promptly with the mandated evaluation. No evidence of substance abuse or cognitive impairment was found.

8.    Fitness-for-duty testing was completed December 4th. I had a final visit with evaluator on December 9, 2008, to review his report. Despite my calls to the program directors and the EAP liaison, no response or plan for return to work was offered to me until the evening of December 16th. During that period of time out of work, I was sufficiently alarmed by the delay in returning me to clinical duty that I consulted an attorney to clarify my options. At no time did I threaten legal action against the hospital or program.

9.    I was scheduled many months in advance to go out on maternity leave December 22nd (my partner was pregnant and expecting our third child). As a result, I was given only 3 days in December to demonstrate my clinical performance. One of those days was with Dr. Norcia, who told me he had

ARON 0028

- 5 -

no significant criticisms of my performance and continued to have an "open mind" regarding the decision to extend my training.  Roughly 2 weeks later on 12/31/08, while I was out on maternity leave and without any further assessment of my clinical ability, Dr. Norcia submitted his on line evaluation citing poor performance during the first week of October in the ICU. In that evaluation note, based on that week, he stated that he did not feel I was performing at the level of a CA-3 and should therefore repeat the 6 month block.  I've not received at any time the specifics of any other performance concerns that may have been communicated to the program directors.

10.     On January 7th, 7 weeks prior to my graduation date, I received written notice that the decision had been made to extend my training 6 months.

11.     At the outset of this process, I was assured repeatedly by my program directors as well by Dr. Jerry Shuck (DIO) and Will Rebello (GME manager) that I would have opportunity to appeal this decision.  I am attaching the letter I drafted (but did not submit) 12/23/09 to request an appeal committee.  When I reviewed the Resident's Manual, it clearly states that no appeal is allowed if the intervention is "academic" (see below). When I questioned this with the GME office and my program, I was then told that I had the following options: (1) accept the 6-month training extension without an appeal, or (2) refuse the extension, at which point I would be subject to a disciplinary action or termination without a certificate of completion, which I could then appeal, but with the caveat that I could then be terminated, and any disciplinary action would be reported to the state medical board.

12.     I was in contact with the GME office repeatedly throughout this process. Mr. Rebello and Dr. Shuck were readily available to listen to my concerns. Mr. Rebello advised me at the beginning of this process that they could not be more active, because once I filed an appeal, Dr. Shuck would be called upon to mediate and would want to remain objective.  When it became clear that no appeal was allowed (unless I invited a disciplinary action), Mr. Rebello told me that he really shouldn't be communicating with me at all

- 6 -

because I had consulted an attorney. Dr. Shuck stated to me that he thought the way this had been handled by my program director was "unconscionable", but that "I think at this time I can't be seen as your advocate." He advised that I speak with Dr. Nearman, our department chairman. Dr. Nearman has deferred to the program directors' assessment in this case as he has delegated that responsibility to them. More recently, Dr. Shuck has had conversations with Dr. Nearman and the program directors, but this has not changed my status in any way.

In summary, the action on the part of my program regarding my performance was taken only 2 months before my graduation date, without any preceding remediation or intervention. I was formally notified that I would not be graduating on time 7 weeks prior to my completion date. Documentation of one instance of unsatisfactory clinical performance during this reporting period was entered almost 3 months after the fact.

Aside from Dr. Norcia's post-dated entry of 12/31/08, the last negative evaluations I received dated from the December 2007-July 2008 reporting period. As I mentioned above, I had taken initiative myself to address and correct the concerns expressed at that time, and the evaluations I have received since May of 2008 has been satisfactory to excellent. Had my program directors taken some action with me then, one year ago, it would have allowed me the subsequent 6 month period to demonstrate my competency, and, according to the American Board of Anesthesiology requirements, I would not have been subject to this training extension (see below). My own educational experience could have been improved, and serious professional consequences to me could have been avoided.

In addition, my program directors have not explained why, if my performance was so concerning in early October to justify a fitness-for-duty evaluation, I was kept on duty through October and November. During that time I supervised a very busy ICU service, and subsequently a very busy Acute Pain/Regional Anesthesia service, during which I received good evaluations. .

The ACGME guidelines require that residents "must be allowed to implement the institution's grievance procedures if they receive a written notice either of intent not to

ARON 0030

- 7 -

renew their agreement(s) or of intent to renew their agreement(s) but not to promote them to the next level of training". Our GME manager and our DIO both declined initially to mediate in this process despite my repeated communication to their office of my concerns, advising that I seek an appeal if I received an adverse action. Only later in the process (after I reviewed the hospital by-laws myself) was I told I had no option of seeking a review or appeal unless I chose to invite a disciplinary action, placing myself at greater professional risk.

From the beginning of this process, I responded promptly and concretely, in good faith, to correct any possible deficiencies in my performance. My file will show that I have communicated with my supervisors, my chairman, and the GME office from the outset, expressing my concerns as well as my willingness to develop a mutually acceptable plan of action. This has produced little response other than the continued execution of a remediation plan with severe personal and professional consequences for me, the basis for which remains vague. My evaluations from faculty who work with me have been and continue to be good.

Both Dr. Shuck and Dr. Nearman agree that I have exhausted the options for reaching an internal resolution of this situation. They are aware that I am submitting this complaint to you.

I appreciate your review of these concerns and look forward to hearing your suggestions. Thank you for your attention to this matter.

Sincerely,

Sarah Aronson, MD
UHCMC/Case School of Medicine
Home phone: (216) 721 5945
Email:       sarah.aronson@uhhospitals.org
Page:        31262@pager.uhhospitals.org

ARON 0031

- 8 -

Current UH Resident Policy:

"A Performance Review Action is an opportunity for the Resident to address expected standards that need improvement. A Performance Review Action is not reportable to the State of Ohio Medical Board; it is not a Disciplinary Action (defined on next page); it cannot be appealed; and it becomes part of the Resident's permanent file.

1. Performance Alert Notice. A Performance Alert Notice is the formal written notification to a Resident concerning areas of marginal or unsatisfactory performance. The Program Director or Faculty Member should initiate a Performance Alert Notice and inform the resident within 7-10 days of identifying an area of concern.

2. Remediation. A remediation period is an opportunity for the resident to correct academic deficiencies and to develop and demonstrate appropriate levels of proficiency for patient care and advancement in the program. Being placed in remediation is notice to the resident of his or her failure to progress satisfactorily as reflected by evaluations and/or other assessment modalities. It is not to be used in lieu of a Disciplinary Action.

Remediation may include, but is not limited to, one or more of the following:

1) Limitations or restrictions on the amount and level of the Resident's patient care activities;

2) Repeating one or more rotations;

3) Participation in a special program;

4) Continuing scheduled rotations with or without special conditions;

5) Supplemental reading assignments;

6) Attending undergraduate or graduate courses and/or additional clinics or rounds;

7) Extending the period of training;

8) Referral to the Employee Assistance Program (see UHCMC Policy HR-85 which shall apply to all aspects of the referral, process and determination); and/or

9) Repeat training year.

ARON 0032

- 9 -

Hospital EAP policy:

4.2.1 Tier 1 Mandatory Referral - Employees may be mandated to attend EAP by their supervisor for the following:

(1) Impaired functioning (fit for duty); or

(2) Violent, hostile, or reckless behavior that endangers the safety of employees, visitors, patients or physicians or that causes others to fear for his/her safety; or

(3) Reasonable suspicion of alcohol/drug use.


The American Board of Anesthesiology requirements:

2.     The period of clinical anesthesia training as an enrolled resident of any single program is at least six months of uninterrupted training.

3.     The six-month period of clinical anesthesia training in any one program ends with receipt of a satisfactory Certificate of Clinical Competence. To receive credit from the ABA for a period of clinical anesthesia training that is not satisfactory, the resident must immediately complete an additional six months of uninterrupted clinical anesthesia training in the same program with receipt of a satisfactory Certificate of Clinical Competence…When a resident receives a satisfactory Certificate of Clinical Competence…the ABA will grant credit…for the period of satisfactory training and the most recent of the periods of unsatisfactory training immediately preceding it.

ARON 0033

**From:** Mannix, Marin
**Sent:** Friday, July 10, 2009 7:58 AM
**To:** Aronson, Sarah
**Cc:** Wallace, David
**Subject:** RE: metro
Sarah,



You will be on Metro your first two weeks, and ICU your second two weeks.

Marin Mannix, MD
Chief Resident, Department of Anesthesiology and Perioperative Medicine
University Hospitals Case Medical Center



---

**From:** Aronson, Sarah
**Sent:** Tue 7/7/2009 3:58 PM
**To:** Mannix, Marin
**Subject:** RE: metro

nope, got bumped from january, they weren't expecting me and didn't want to put me in on short notice.

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*

---

**From:** Mannix, Marin
**Sent:** Tue 7/7/2009 11:47
**To:** Aronson, Sarah
**Subject:** RE: metro

have you done your trauma rotation yet?

Marin Mannix, MD
Chief Resident, Department of Anesthesiology and Perioperative Medicine
University Hospitals Case Medical Center



---

**From:** Aronson, Sarah
**Sent:** Tue 7/7/2009 8:55 AM
**To:** Adamovich, Christine
**Cc:** Mannix, Marin
**Subject:** metro

Do you know whether I've been scheduled at Metro in August?  FYI I am taking the boards Aug 4.





# SHERIDAN
HEALTHCARE™

1613 N. Harrison Parkway, Suite #200
Sunrise, FL 33323
(800) 437-2672 • (954) 838-2371

## REFERENCE VERIFICATION REQUEST
PLEASE TYPE OR PRINT     PLEASE ANSWER ALL QUESTIONS

**APPLICANT NAME:  Sarah Aronson, MD**
The above named physician has applied to join our organization in the field of Anesthesiology.  To assist in evaluating this physician, please complete the verification form below and return this form in the business reply envelope enclosed, or FAX your response to (866) 292-8482.  Please base your evaluation on demonstrated performance compared to that which is reasonably expected of a physician and his/her level of training, experience and background.  This information will be held in strict confidence.  We appreciate your prompt response.

**Karen Block**
Recruiting Manager

In what capacity were you associated with the above physician?  _professional hospital based_
In what facility did you work with physician?  _University Hospitals - Case Medical Center_
Dates worked with this physician:  _3/06 - present_

| AREAS OF EVALUATION | EXCELLENT | GOOD | AVERAGE | POOR | CANNOT EVALUATE |
|---|---|---|---|---|---|
| Overall Medical Knowledge | ✓ | | | | |
| Professional Judgment | | ✓ | | | |
| Evaluation and Management of Patient | | ✓ | | | |
| Clinical Competence | | ✓ | | | |
| OB Anesthesia (epidurals) | | ✓ | | | |
| Cardiac Anesthesia | | ✓ | | | |
| TEE Proficiency | ✓ | ✓ | | | |
| Neurosurgical Anesthesia | | ✓ | | | |
| Pediatric Anesthesia | | ✓ | | | |
| Spinals | | ✓ | | | |
| Regional Blocks (axillary, interscalene, etc.) | | ✓ | | | |
| Swan Ganz insertion/interpretation | | ✓ | | | |
| CVP insertion/interpretation | | ✓ | | | |
| Arterial Line insertion | | ✓ | | | |
| Record Keeping | | ✓ | | | |
| Rapport with 1. Ancillary Staff | ✓ | | | | |
| 2. Patients & their families | ✓ | | | | |
| 3. Surgeons | ✓ | | | | |
| 4. Administration | | | | | ✓ |
| Communication Skills | ✓ | | | | |
| Motivation-Ambition | | ✓ | | | |
| General Behavior | | ✓ | | | |
| Appearance | | ✓ | | | |
| Emotional Stability | ✓ | | | | |
| Community Participation | | | | | ✓ |
| Career Orientation | | | | | ✓ |
| Sense of Responsibility | | ✓ | | | |



THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
40

## COMMENT ON AREAS OF STRENGTH

*Excellent fund of knowlegde, clinical reasoning.*

## COMMENT ON AREAS THAT NEED IMPROVEMENT

*Multitasking.*

## CORRECTIVE ACTION

To your knowledge, has the physician ever been subject to any disciplinary actions such as a reprimand, suspension or termination?   ☐ Yes   (☐ No)

To your knowledge, has this physician been involved in any malpractice litigation?   ☐ Yes   (☐ No)

## CONDUCT AND HEALTH STATUS

To your knowledge, has this physician ever displayed any signs which caused suspicion of behavior, drug or alcohol problems?   ☐ Yes   (☐ No)

## RECOMMENDATIONS

1. Recommended highly without reservations
2. Recommended as qualified and competent   ✓
3. Recommended with some reservation
4. Do not recommend

## REPORT BASED ON THE FOLLOWING

1. Close personal observation   ✓
2. General impression
3. A composite of evaluation by supervisors   ✓
4. Other

## ADDITIONAL COMMENTS

Signature: _Novis M_   Date: _9/2/08_

Name: _Matthew P. Novis, MD_   Phone: _216-844-7335_

Title: _Residency Co-director_

Dr. Garcia

Karen Black,

Florida Hosp.

**DATE** 8/29 **TIME**

**AREA CODE** 954 **NUMBER** 838-2578

**EXTENSION** or

800-437-2672 ext 2578

"I would like a verbal reference for
Karal. Gregea, or if you'd prefer
please fill out written reference"

**SIGNED**

☐ RETURNED CALL ☐ CALL BACK ☐ WILL CALL AGAIN ☐ PHONED ☐ WANTS TO SEE YOU ☐ WAS IN

AMPAD NO. 23-776 400 SETS    RECYCLED PAPER

# HP LaserJet 4100 MFP



HHS Anesthesiology
6 944 3781
/03/2008 05:30 PM

## Fax Call Report

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 16106 | 09/03 05:28 PM | Send | 919548580136 | 01'21 | 2 | OK |



# SHERIDAN
### HEALTHCARE

1613 N. Harrison Parkway, Suite #200
Sunrise, FL 33323
(800) 437-2672 • (954) 838-2371

## REFERENCE VERIFICATION REQUEST
PLEASE TYPE OR PRINT    PLEASE ANSWER ALL QUESTIONS

**APPLICANT NAME: Sarah Aronson, MD**
The above named physician has applied to join our organization in the field of Anesthesiology. To assist in evaluating this physician, please complete the verification form below and return this form in the business reply envelope enclosed, or FAX your response to (866) 293-8422. Please base your evaluation on demonstrated performance compared to that which is reasonably expected of a physician and his/her level of training, experience and background. This information will be held in strict confidence. We appreciate your prompt response.

Karen Block
Recruiting Manager

In what capacity were you associated with the above physician? _professional, hospital based_
In what facility did you work with physician? _University Hospitals - Case Medical Center_
Dates worked with this physician: _3/06 - present_

| | | | | |
|---|---|---|---|---|
| Overall Medical Knowledge | | ✓ | | |
| Professional Judgement | | | ✓ | |
| Evaluation and Management of Patient | | | ✓ | |
| Clinical Competence | | | ✓ | |
| OB Anesthesia (epidurals) | | | ✓ | |
| Cardiac Anesthesia | | | ✓ | |
| TEE Proficiency | | ✓ | ✓ | |
| Neurosurgical Anesthesia | | | ✓ | |
| Pediatric Anesthesia | | | ✓ | |
| Spinals | | | ✓ | |
| Regional Blocks (axillary, interscalene, etc.) | | | ✓ | |
| Swan Ganz insertion/interpretation | | | ✓ | |
| CVP insertion/interpretation | | | ✓ | |
| Arterial Line insertion | | | ✓ | |
| Record Keeping | | | ✓ | |
| Rapport with 1. Ancillary Staff | | ✓ | | |
| 2. Patients & their families | | ✓ | | |
| 3. Surgeons | | ✓ | | |
| 4. Administration | | | | ✓ |
| Communication Skills | | ✓ | | |
| Motivation-Ambition | | | ✓ | |
| General Behavior | | | ✓ | |
| Appearance | | | ✓ | |
| Emotional Stability | | | ✓ | |
| Community Participation | | | | ✓ |
| Career Orientation | | | | ✓ |
| Sense of Responsibility | | | ✓ | |

*My*Evaluations.com

Main | Mail | Voluntary | MyPortfolio | Reports | Evaluations | Procedures | Duty-Ho

Main > Program Director's Inbox > Evaluation Details

Welcome, *Dr. David Wallace, DO*

UNIVERSITY HOSPITALS
HEALTH SYSTEM
University Hospitals of Cleveland
DEPARTMENT OF ANESTHESIO

Thursday, February 18, 2

MyPortfolio      MyHelp      MyQuiz      My

# ICU Weekly Evaluation Of Resident (V.1)

*Resident Physician:* Dr. Sarah Aronson
*Evaluation Period:* 10/06/2008 to 10/10/2008

Evaluation of Resident Phy

*Evaluator:* Dr. Matthew N
*Rotation:* Anesthesia

## Core Competencies

| | |
|---|---|
| **Interpersonal and Communication Skills** | |
| Nursing and Office Staff | 3 - Performance appropriate for level of training |
| Attendings, Fellows, and Residents | 3 - Performance appropriate for level of training |
| Surgical and Referring Staff | 3 - Performance appropriate for level of training |
| **Medical Knowledge** | |
| Understanding | 3 - Performance appropriate for level of training |
| Pharmacology | 4 - Performance above expected for level of training |
| Reading | 4 - Performance above expected for level of training |
| **Patient Care** | |
| Data Collection | 3 - Performance appropriate for level of training |

EXHIBIT
41
THE OHIO LEGAL BLANK CO., INC.

**Overall/Summary**

| Resident's overall clinical competence in rotation. | 2 - Performance below average for level (feedback |
|---|---|

**Evaluator Comments**

Verbal responses to many questions or statements are delayed, including straight forward issues. She usually gets the work done but it takes considerably longer than expected. I have not had the opportunity to see Dr Aronson perform in a critical situation so I'm not sure if she could respond appropriately. This leads me to conlude that she does not perform at hte level of A CA3 in the last six months of her training.

**Additional Comments:**
Explanation for a score of 2 out of 5 for the Patient Care: see comments
Explanation for a score of 2 out of 5 for the Overall/Summary: see comments
*I did verbally discuss this evaluation with the resident face-to-face. Signed - Dr. Matthew Norcia*

**Optional Evaluator Confidential Comments**

N/A

**Acknowledgement Comments**

*Thank you for your comments. I acknowledge receipt of this evaluation. - The attending DID verbally discuss this evaluation with me face-to-face, at the end of the rotation. Signed - Dr. Sarah Aronson*

**Review Comments**

**Program Director Comments (These are not confidential)**

 FLORIDA HOSPITAL
*Flagler*

> **Medical Staff Office**
> **60 Memorial Medical Parkway**
> **Palm Coast, FL 32164**
> **Telephone 386-586-4243**
> **Fax 386-586-4249**

February 19, 2009

Matthew Narcia, MD
11100 Euclid Avenue
Cleveland, OH 44106

Dear Dr. Narcia,

RE:     Sarah Aronson, MD  (Anesthesiology)

The above named practitioner has applied for membership to the Medical Staff of Florida Hospital
Memorial System, and has given your name as a Professional Reference. We would appreciate your
response to the following questions:

I.     REPORT IS BASED ON (Circle one)
       A.  Close personal observation
       B.  General Impression
       C.  A composite of evaluation by supervisors
       D.  Colleague

II.    EVALUATION

This evaluation should be based on demonstrated performance compared to that reasonably expected
of a practitioner at his/her level of training, experience, and background.  Please rate the subject in
each of the following categories on a scale of 1 to 10 or N/A (not applicable), with 1 being the bottom
and 10 the top of the scale.

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | N/A |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Medical/Clinical knowledge | | | | | | | | | X | | |
| Technical and clinical skills | | | | | X | | | | | | |
| Clinical judgment | | | | | X | | | | | | |
| Interpersonal & Communication skills | | | | X | | | | | | | |
| Professionalism | | | | | | X | | | | | |
| *Other* | | | | | | | | | | | |
| Patient Management | | | | | X | | | | | | |
| Uses evidence-based medicine (protocols, policies, etc) | | | | | | | | X | | | |
| Ethical conduct | | | | | | | | X | | | |
| Timeliness of medical record completion | | | | | | | | | | | X |
| Physician-patient relationship | | | | | | | | X | | | |
| Cooperativeness/ability to work with others | | | | | | X | | | | | |
| Ability to understand and speak English | | | | | | | | | X | | |
| Appearance | | | | | | | | X | | | |


EXHIBIT
42

Feb 19 2009 4:46     FHFMedStaffOffice          386 586 4249            p.3



FLORIDA HOSPITAL
*Flagler*

Medical Staff Office
60 Memorial Medical Parkway
Palm Coast, FL 32164
Telephone 386-586-4243
Fax 386-586-4249

Page 2 of 2

III.    CORRECTIVE ACTION
Has the practitioner ever been subjected to any disciplinary action, such as admonition, reprimand, suspension, or termination?          YES____     NO  X

        If yes, please give details in item V or on a separate sheet of paper.

IV.    RECOMMENDATIONS (Circle One)
        A.  Recommend highly without reservation
        B.  Recommend as qualified and competent
        C.  Recommend with some reservation
        D.  Do not Recommend

V.    COMMENTS
(Notable strengths and weaknesses or explanation of above answers)
_____
_____
_____
_____

VI.    Current Competency
Upon review of the applicant's Privilege List, it is my belief that the applicant is qualified to undertake the privileges requested with reasonable accommodation.

        YES____     NO____

If no, please comment_____
_____
_____

Since prompt action on this application is required, you may fax this response to 386-586-4249. If you have any questions, please contact me at 386-586-4243.

Sincerely,

*Donna McFee*

Donna McFee, CPCS
Medical Staff Manager

PLEASE COMPLETE THE FOLLOWING:

_____          _____
Print                            Signature

_____          _____
Date                             Title

Telephone number and best time to call: _____

ATTN: FELICIA JACKSON
PG 1 OF 2   7/29/09   1800

Side A

Initial Medical Licensure
Supplemental Form
MBP IML3
06/2006 INT

MARYLAND BOARD OF PHYSICIANS
4201 Patterson Avenue | P.O. Box 2571
Baltimore, Maryland 21215-0095
Telephone: 410-764-4777   800-492-6836

VERIFICATION OF POSTGRADUATE MEDICAL EDUCATION

**Part 1**   APPLICANT: Complete Part 1 and sign where indicated in the Part 2 instructions.  Print your name on top of the reverse page, and send a form to the director of each postgraduate training program you attended. Be sure to copy both sides.

a. Applicant's Name: ARONSON   SARAH   CYMRY
Last Name and Generational Indicator (Jr., Sr., II, III, etc.)   First Name   Middle Name

Address: 10510 PARK LANE #115

City: CLEVELAND  OH   State: OH

Date of Birth: 0 1 | 0 1 | 6 2   Social Security Number: 0 3 6 - 4 0 - 0 2 3

b. Name of Institution: UNIV. HOSPITALS OF CLEVELAND

Department and Area of Training: ANESTHESIOLOGY

Complete Address: 11100 EUCLID AVE BOLWELL 2400

City: CLEVELAND   State: OH

FROM: Month 0 3 Year 0 6   TO: Month 0 9 Year 0 9

**Part 2**   POSTGRADUATE TRAINING PROGRAM DIRECTOR: Please complete Part 2 according to the records available and send directly to the Maryland Board of Physicians at the above address.  Please do not send original or copies to me.   Applicant's Signature: _____

1. Did the applicant participate in postgraduate training in your department during the period listed above?*
   [X] YES   [ ] NO   If "No," please enter exact dates: _____ to _____

   Program Specialty: ANESTHESIOLOGY

   If training was part-time, please explain the training schedule after item 8 of this form.

2. During the time of the applicant's participation, was the postgraduate training program accredited?   [X] YES   [ ] NO
   Accredited by: [X] ACGME: Program # 0403821119   [ ] AOA: ID #: _____   [ ] RCPSC

3. Did the applicant participate in all of the components of the training as required by the accrediting body?
   [X] YES   [ ] NO   Comments (attach signed and dated additions as needed): _____

4. Did the applicant successfully complete all requirements of each year of training?
   [X] YES   [ ] NO   Comments (attach signed and dated additions as needed): _____

5. During the applicant's year(s) of training, did the applicant have any break in training?
   [X] NO   [ ] YES   Comments (attach signed and dated additions as needed): _____

(Continued on next page)

EXHIBIT
43

Initial Medical Licensure
Supplemental Form
MBP IMLS
06/2005 INT

MARYLAND BOARD OF PHYSICIANS
VERIFICATION OF POSTGRADUATE MEDICAL EDUCATION

Side B

Applicant's Name (print): SARAH CYMRY ARONSON

6. Did the applicant have any physical or mental problem that affected the applicant's ability to practice medicine during the period of training?

NO ☐  YES ☒  If "Yes," please give a detailed explanation* Dr Aronson's performance was not up to expectations, most likely cause was the influence of medication she was taking for migraine headaches. Medication has been stopped, performance improved.

7. Was any action taken against the applicant by any training program, hospital, medical board, licensing authority, or court? Such actions include, but are not limited to investigations, limitations of privileges or special conditions, requirements imposed for academic incompetence, disciplinary actions, probationary actions, etc.

NO ☒  YES ☐  If "Yes," please give a detailed explanation* _____

8. In each year of training, did the applicant demonstrate sufficient academic and clinical ability to qualify for advancement without conditional or probationary status to the next year and next progressive level of responsibility in a designated specialty program?

YES ☐  NO ☒  Comments:* See comments for question #6 since the implication of the medication affecting her performance was determined during her last scheduled 6 mo. period, an additional 6 mo period was added to her training.

* If space is not sufficient, please attach a signed and dated detailed explanation.

Attestation: I attest that the information I have provided regarding the applicant is true, accurate, and complete according to all available records.

MATTHEW NORCIA MD
Printed Name of Program Director

UNIV. HOSPITAL OF CLEVELAND
Hospital

ANESTHESIOLOGY
Department

_____
Signature

RESID. PROGRAM DIRECTOR
Title

11100 EUCLID AVE BOLWELL 2400
Address

CLEVELAND OH 44106
Telephone Number  216 844 7335

5/6/09
Date

                    re letter for fl license.txt
From: Norcia, Matthew
Sent: Monday, December 08, 2008 10:40 AM
To: Aronson, Sarah
Subject: RE: letter

It was written and signed last week, Kathi sent it out. They should be getting it
soon.


-------------------------------------------------------------------------------
From: Aronson, Sarah
Sent: Sun 12/7/2008 8:37 PM
To: Norcia, Matthew
Subject: letter


The FL board hasn't rec'd a letter from you - this was the letter of recommendation
for licensure I gave you an envelope for last month, this is separate from residency
documentation.  Should I ask someone else?
Thanks,
Sarah

Sarah Aronson, MD
UHHS/Case School of Medicine



Page 1

ARON 0220

## Aronson, Sarah

| | |
|---|---|
| **From:** | Aronson, Sarah |
| **To:** | Norcia, Matthew |
| **Cc:** | Fulton-Royer, Jill; Rebello, William |
| **Subject:** | RE: f/u |
| **Attachments:** | |

**Sent:** Mon 12/15/2008 13:14

Matt,
This is now day 11 I've been off duty. I will be out on maternity leave as of the 22nd of December (one week from today), unless of course the baby arrives before then. I expect a prompt resolution to this situation, given that I completed the eval 10 days ago and received a verbal report 6 days ago. If there is a hold-up with receiving the necessary documentation, then EAP needs to follow-up and get what they require. I made the effort several months ago to save my PTO and adjust my rotation schedule for this birth and maternity leave so that my completion date would not be affected. I do not intend to allow that to be jeopardized.

I appreciate your attention to this matter,
Sarah


*Sarah Aronson, MD*
*UHHS/Case School of Medicine*

---

**From:** Norcia, Matthew
**Sent:** Mon 12/15/2008 12:33
**To:** Aronson, Sarah
**Subject:** RE: f/u

Sarah, We'll have to discuss this with Dave when all the information is together, this week I hope.

---

**From:** Aronson, Sarah
**Sent:** Sat 12/13/2008 9:29 AM
**To:** Norcia, Matthew
**Subject:** FW: f/u

Matt,
See below - I got the final report from my eval Tuesday afternoon, I've been waiting since Wednesday to hear about getting back to work. Not taking into account this involuntary leave, I have 18 days left to reach the 60 I'm allowed away from residency. I now have 10 days away from work on this leave, if I don't count the 26th and the 28th I spent in the library. What's the plan?
Sarah

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*

---

**From:** Aronson, Sarah
**Sent:** Fri 12/12/2008 09:29
**To:** Rebello, William
**Subject:** f/u

THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
45

CLEVELAND, OHIO 44103-1709

ARON 0162

Will,
Can you tell me how this time away from work is handled? I've completed the eval, the psychologist

cleared me, and now I'm left with having missed at least 10 days of work when I had saved all my remaining PTO to use for maternity leave the end of this month. The ABA only allows me 20 days/year away from training; I have a contract to start a position the beginning of March. Am I going to have to choose between maternity leave time vs. adding on to make up for what I've missed and not starting my job on time?  What options does the program have to address this?
Thanks,
Sarah

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*

ARON 0163

⚠ Attachments can contain viruses that may harm your computer. Attachments may not display correctly.

**Aronson, Sarah**

| From: | Aronson, Sarah | | Sent: | Thu 12/4/2008 08:45 |
|---|---|---|---|---|
| To: | Norcia, Matthew | | | |
| Cc: | Nearman, Howard | | | |
| Subject: | fyi correction | | | |
| Attachments: | 📄 eap.doc(23KB) | | | |

Not that it has any bearing on the process at present, but for the sake of accuracy, I corrected a miswritten date in this letter (attached, May 2008 rather than 2007).

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*



EXHIBIT
46

ARON 0152

11/28/08

I am writing this as an initial response to my recent performance review of mid-October and Nov. 24, and the decision of Drs. Wallace and Norcia to remove me from clinical service pending a fitness-for-duty evaluation.

On reviewing the data of the past 9 months, I don't feel this decision was justified. I understand, however, the highest priority is to ensure patient safety and clinical reliability, and I will comply unreservedly in the evaluation that has been mandated.

During my time in this program, I have received a pattern of evaluations regarding my need to improve my efficiency and speed of response. Since March of last year, I have made it a priority to develop this aspect of my practice. For the past 6-7 months I have not received any negative evaluations in this area.

I gave some thought to individual evaluations as well.

Regarding Dr. Zahniser, I was surprised and confused by both of his evaluations. In his second, he rates my performance as satisfactory with no comment to me, but then states that I am the "worst" resident and "very weak".

Regarding Dr. Jonsyn, I will say that I have no doubts regarding his commitment to patient care and his desire to be a good faculty member. In comparison to our other ICU faculty, he has difficulty with time management and has a disorganizing and stressful effect on the team, in my experience. I regret that I was not able to "manage" him in February, or in October, when I knew what to expect but had an extremely busy service and had to work with him for three weeks. I have discussed my concerns regarding his behavior with Drs. Norcia and Rowbottom. I will take serious issue if his evaluation of me forms a substantial basis for any decision regarding my competency as a resident.

In March I believe Dr. Levin commented that I had "no sense of urgency" on OB and that I could speed up my epidural placements, but at the same time commented positively regarding my clinical and supervisory ability. I certainly feel a sense of urgency on the OB service when those situations arise, and proceed accordingly. My temperament is such that my demeanor stays fairly level even in emergencies; I can see that might create an impression that I don't appreciate the urgency if my overall speed is already an issue. I don't think I can change my temperament, but I think my speed has improved. I can see also the importance of verbally communicating my understanding of a situation in order to create a sense of confidence.

In April, Dr. Hayek and I discussed some of these issues. I did find it difficult at the beginning of the month to find the most team-efficient way to divide my attention between the consult service, the clinic, and the MOSC pre-op/procedure room. I take responsibility for that, as it was not for lack of effort, and I'm sure many residents can move in and out of that role with more smoothness than I did. I also took suggestions from the fellows and Dr. Hayek and improved my distribution of effort. I don't feel that Dr. Hayek can comment meaningfully on my vigilance or acute responsiveness as an anesthesiologist.

In May, I remember the case with Dr. Adamek, and I will defer to his experience; while I wasn't dawdling, I'm certain that I could have streamlined my preoperative preparation even more and speeded the process without compromising her care. Dr. Adamek has given me very high ratings on his previous evaluations.

Since May of 2007, I have had satisfactory to positive evaluations. I am approaching faculty with whom I have worked over the past 7 months to request more detailed feedback regarding these concerns. In my last meeting with Dr. Norcia and Wallace together, I became concerned that perhaps the topiramate that I take for migraine prophylaxis was creating a response delay in me of which I was not aware, and I suggested the option of involving the EAP in this process. I did not anticipate being removed from clinical duties as a result of that referral, and question the necessity of that approach given my evaluations since May 2008. I am, however, willing to complete the process as currently laid out in a timely fashion.

It is my hope that we can come to a resolution of these concerns as soon as possible.

Sincerely,
Sarah Aronson, MD

Corrected 12/4/08   (orig  11/25/08)

I am writing this as an initial response to my recent performance review of mid-October and Nov. 24, and the decision of Drs. Wallace and Norcia to remove me from clinical service pending a fitness-for-duty evaluation.

On reviewing the data of the past 9 months, I don't feel this decision was justified. I understand, however, the highest priority is to ensure patient safety and clinical reliability, and I will comply unreservedly in the evaluation that has been mandated.

During my time in this program, I have received a pattern of evaluations regarding my need to improve my efficiency and speed of response. Since March of last year, I have made it a priority to develop this aspect of my practice. For the past 6-7 months I have not received any negative evaluations in this area.

I gave some thought to individual evaluations as well.

Regarding Dr. Zahniser, I was surprised and confused by both of his evaluations. In his second, he rates my performance as satisfactory with no comment to me, but then states that I am the "worst" resident and "very weak".

Regarding Dr. Jonsyn, I will say that I have no doubts regarding his commitment to patient care and his desire to be a good faculty member. In comparison to our other ICU faculty, he has difficulty with time management and has a disorganizing and stressful effect on the team, in my experience. I regret that I was not able to "manage" him in February, or in October, when I knew what to expect but had an extremely busy service and had to work with him for three weeks. I have discussed my concerns regarding his behavior with Drs. Norcia and Rowbottom. I will take serious issue if his evaluation of me forms a substantial basis for any decision regarding my competency as a resident.

In March I believe Dr. Levin commented that I had "no sense of urgency" on OB and that I could speed up my epidural placements, but at the same time commented positively regarding my clinical and supervisory ability. I certainly feel a sense of urgency on the OB service when those situations arise, and proceed accordingly. My temperament is such that my demeanor stays fairly level even in emergencies; I can see that might create an impression that I don't appreciate the urgency if my overall speed is already an issue. I don't think I can change my temperament, but I think my speed has improved. I can see also the importance of verbally communicating my understanding of a situation in order to create a sense of confidence.

In April, Dr. Hayek and I discussed some of these issues. I did find it difficult at the beginning of the month to find the most team-efficient way to divide my attention between the consult service, the clinic, and the MOSC pre-op/procedure room. I take responsibility for that, as it was not for lack of effort, and I'm sure many residents can move in and out of that role with more smoothness than I did. I also took suggestions from the fellows and Dr. Hayek and improved my distribution of effort. I don't feel that Dr. Hayek can comment meaningfully on my vigilance or acute responsiveness as an anesthesiologist.

In May, I remember the case with Dr. Adamek, and I will defer to his experience; while I wasn't dawdling, I'm certain that I could have streamlined my preoperative preparation even more and speeded the process without compromising her care. Dr. Adamek has given me very high ratings on his previous evaluations.

Since May of 2008, I have had satisfactory to positive evaluations. I am approaching faculty with whom I have worked over the past 7 months to request more detailed feedback regarding these concerns. In my last meeting with Dr. Norcia and Wallace together, I became concerned that perhaps the topiramate that I take for migraine prophylaxis was creating a response delay in me of which I was not aware, and I suggested the option of involving the EAP in this process. I did not anticipate being removed from clinical duties as a result of that referral, and question the necessity of that approach given my evaluations since May 2008. I am, however, willing to complete the process as currently laid out in a timely fashion.

It is my hope that we can come to a resolution of these concerns as soon as possible.

Sincerely,
Sarah Aronson, MD

11/25/08

**Aronson, Sarah**

| | | | |
|---|---|---|---|
| From: | Aronson, Sarah | **Sent:** | Tue 12/23/2008 08:41 |
| To: | Norcia, Matthew; Wallace, David | | |
| Cc: | | | |
| Subject: | RE: clarification | | |
| Attachments: | | | |

Checking again re: maternity leave.  Virginia ended up having a C/S yesterday for breech, so the issue of how many leave days I have and how I can use them becomes even more significant.
Thank you for your attention to this matter.

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*

---

**From:** Aronson, Sarah
**Sent:** Mon 12/22/2008 11:29
**To:** Aronson, Sarah; Norcia, Matthew; Wallace, David
**Subject:** RE: clarification

Checking again - feel free to email me or page with info.  We're on labor and delivery today.
Sarah

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*

---

**From:** Aronson, Sarah
**Sent:** Fri 12/19/2008 23:12
**To:** Norcia, Matthew; Wallace, David
**Subject:** clarification

Could you please clarify for me how the 12 days of work I lost this month are handled in the various scenarios we discussed?  Starting this month I had 18 days saved to use for maternity leave.  I will be on leave starting monday the 22nd and I need to know how much time I am allowed to take.  I want to make sure I stay within the guidelines of the residency program.
Thank you,
Sarah

*Sarah Aronson, MD*
*UHHS/Case School of Medicine*



EXHIBIT
47

ARON 0165

Admission qualifications may be reestablished by qualifying on an entry examination designated by the Board. The Board has designated the examination administered annually by the Joint Council on In-Training Examinations as the entry examination. Information about the entry examination and a registration form may be obtained by writing the Joint Council c/o the American Society of Anesthesiologists. Alternatively, the applicant may complete 12 consecutive months of additional clinical training in anesthesia **as a CA-3 year resident in one ACGME-accredited program or as a fellow in one ACGME-accredited anesthesiology subspecialty program** with receipt of a satisfactory Certificate of Clinical Competence covering the final six months.

The applicant must qualify on the entry examination or satisfactorily complete the year of additional training after the date the ABA declared his or her most recent application void. The applicant must complete the requalifying examination before applying to the ABA. If the applicant will complete the year of additional training by the end of the grace period (see Section 2.04.D), he or she may apply to the ABA for the immediately preceding Part 1 examination. The applicant must apply to the ABA within three years of having reestablished his or her qualifications for admission to examination.

G.   International medical graduates practicing anesthesiology in the United States may use an alternate path at most once to qualify for entrance into the ABA examination system for initial certification in the specialty (see Section 5.08). They must fulfill all of the above entrance requirements except requirements D and F. In lieu of Entrance Requirement D, the department chair and the international medical graduate should refer to Section 5.08.

H.   Be capable of performing independently the entire scope of anesthesiology practice (see Sections 1.02.A and 1.02.D) without accommodation or with reasonable accommodation.

**The ABA will *not* validate or report the results to applicants who sit for the Part 1 examination and do not fulfill those conditions identified in Sections 2.04.C and D by the deadlines.**

The ABA shall determine that entry into the examination system is warranted when required information submitted by and on behalf of the applicant is satisfactory. The ABA will notify an applicant who is accepted as a candidate for certification after approval of all credentials.

Although admission into the ABA examination system and success with the examinations are important steps in the ABA certification process, they do not by themselves guarantee certification. The Board reserves the right to make the final determination of whether *each* candidate meets all of the requirements for certification (see Section 2.01).

The Board, acting as a committee of the whole, reserves the right not to accept an application.   The applicant has the right to seek review of such decision (see Section 5.05).

The Board reserves the right to correct clerical errors affecting its decisions.

THE OHIO LEGAL BLANK CO., INC.

EXHIBIT
4 B

CLEVELAND, OHIO 44102-1799

## 2.05   CERTIFICATE OF CLINICAL COMPETENCE

The Board requires every residency training program to file, on forms provided by the Board, an Evaluation of Clinical Competence in January and July on behalf of each resident who has spent any portion of the prior six months in clinical anesthesia training in or under the sponsorship of the residency program and its affiliates. **The Program Director or Department Chair must not chair the Clinical Competence Committee.**

Entry into the examination system is contingent upon the applicant having a Certificate of Clinical Competence on file with the Board attesting to satisfactory clinical competence during the final period of clinical anesthesia training in or under the sponsorship of each program (see Section 2.02.C (3) for details). The Board, therefore, will deny entry into the examination system until this requirement is fulfilled.

Residents who wish to appeal an Evaluation of Clinical Competence, and applicants who wish to appeal final recommendations from the Program Director or Department Chair, must do so through the reporting institution's grievance and due process procedures.

## 2.06   APPLICATION PROCEDURE

A.   Application for admission to the ABA examination system must be made using the ABA Electronic Application System, via the ABA website at www.theABA.org. Exceptions to this requirement will be considered upon written request. Written requests are to be addressed to the ABA Secretary and must include the basis for the requested exception.

B.   The application form includes the following Acknowledgement, which the applicant shall be required to sign by electronic signature.

*I, the undersigned applicant ("Applicant"), hereby apply to the ABA for entrance into its examination system for the purpose of obtaining ABA certification status ("Certification"). I acknowledge that my application is subject to the ABA rules and regulations. I further acknowledge and agree that if I withdraw my application or the ABA does not accept it, the ABA will retain the application fee and any late fee.*

*I represent and warrant to the ABA that all information contained in this application ("Application") is true, correct and complete in all material respects. I understand and acknowledge that any material misstatement in or omission from this Application shall, at any time, constitute cause for disqualification from the ABA examination system or from the issuance of an ABA Certificate or to forfeiture and redelivery of such ABA Certificate.*

*I agree that the Acknowledgement, as submitted by me, shall survive the electronic submission of the Application, regardless of whether or not the information or data provided in the Application has been reformatted in any manner by the ABA. I also agree that this Acknowledgement is a part of and incorporated into the Application whether submitted along with the Application or not.*

*I acknowledge that I have read a copy of the applicable ABA Booklet of Information. I agree to be bound by the policies, rules, regulations and requirements published in the applicable Booklet, in all matters relating to consideration of and action upon this Application and Certification should it be granted. I understand that ABA certificates are subject to ABA rules, regulations and Bylaws, all of which may be amended from time to time without further notice. In addition, I understand and acknowledge that in the event I have violated any of the ABA rules governing my Application and/or Certification, or in the event I fail to comply with any provisions of the ABA Certificate of Incorporation or Bylaws, such violations shall constitute cause for disqualification from the ABA examination system or from the issuance of an ABA Certificate or for revocation of certification and indication of such action in the ABA Diplomate and Candidate Directory.*

C.   The Application also includes the following Release, which the applicant shall be required to sign by electronic signature.

*I, the undersigned applicant ("Applicant"), hereby apply to the ABA for entrance into its examination system for the purpose of obtaining ABA certification status ("Certification"). I acknowledge that this application ("Application") is subject to the ABA rules and regulations, all of which may be amended from time to time without further notice.*

*In connection with my Application, (#_____), I authorize all persons holding testimony, records, documents, opinions, information and data relevant to or pertaining to my professional competence and ethical conduct and/or behavior (the "Information") to release such Information to the ABA, its employees and agents. This authorization applies whether or not such persons are listed as a reference on my Application. The Information includes any information relating to any abusive use of alcohol and/or illegal*

To:      Jerry Shuck, MD
         DIO

From:   Sarah Aronson, MD

Re:     Residency completion certificate

18 Aug 2009

Dr. Shuck,

I would like to ensure that I will receive an official completion certificate, and that the ABA will receive the final documentation they require, by Friday the 29th of August. I would appreciate your guidance as to how that may be accomplished.

The usual practice in our department is to provide the graduating residents with a certificate of completion at the graduation ceremony, usually 2-3 weeks before their completion date. I approached Dr. Norcia at the end of July to request to receive my certificate in August, as it is required to complete the credentialing process at the hospital where I am scheduled to begin work Sept 1st. He informed me that the certificate had been prepared along with those of the residents who graduated in July, but he didn't know where it was filed. He indicated that as soon as Chris Adamovich came back from vacation August 4th, I could receive the certificate.

Chris informed me that it was not ready, and ordered the certificate upon my request on August 5th. On August 18th, she informed me that the process of gathering signatures for the certificate had only just started that day, and that it might take several weeks to complete. I was informed that these certificates are typically ordered at least 2 months ahead of time so they will be available to distribute to the graduating residents on time.

No one initiated that process in my case, and it appears I will not receive a certificate prior to my completion in roughly one week's time. At my request, Dr. Norcia has instructed Chris to write a letter I can submit for credentialing in lieu of a certificate from UHCMC. Dr. Norcia apparently had no knowledge as to the status of my certificate, and no plan to arrange for me to receive one in a timely fashion.

I have already submitted to my employer a "clinical training" letter in lieu of an official case log, as the residency has lost access to the server that held all of our case data for the past three years. Submitting letters in place of official documents does not just reflect badly on me with a new employer. It calls into question the professionalism of a UHCMC residency program.

Further, the residency program's continuing discriminatory inattention to procedure in my case creates a difficult working and learning environment. I have had to repeatedly pursue my residency director for the most basic elements of professional support required to proceed with my career. Providing such support and documentation for residents is a key part of the program director's job. The residents of UHCMC generally do not need to contact the DIO to accomplish these simple tasks.

On August 31st, the residency program will be required to submit a letter to the ABA attesting to my successful completion of this residency and my eligibility for board certification. On August 4th, I sat for Part 1 of the Anesthesiology Board exam. I expect the results by the first week in October. If the program has not submitted the requisite documentation by that time, the Board will not release or certify the results of my examination. I will not be able to move on to schedule Part 2 of the exam.



Given my experience to date, a strict adherence to procedure must be followed with oversight by an objective party, otherwise I fully anticipate that the program directors will not submit the final certification letter on time.

I would like to know the plan for taking care of this important documentation, and would like to respectfully request that it be completed by August 31, 2009.


Thank you,


Sarah C. Aronson, MD
Case School of Medicine

 

19 August 2009

To Whom It May Concern:

This is to verify that Sarah C. Aronson, M.D. is serving as a Resident in the Department of Anesthesiology at University Hospitals Case Medical Center. Dr. Aronson joined our Residency on March 1, 2006 and her anticipated completion date is August 31, 2009.

At this time there is no graduate certificate available. If you have any questions, please feel free to call.

Sincerely,

Matthew P. Norcia
Residency Program Director

MPN/ca



DEPARTMENT OF ANESTHESIOLOGY AND PERIOPERATIVE MEDICINE
11100 Euclid Avenue  Cleveland, Ohio  44106-5007  Phone 216-844-7335  FAX  216-844-3781
*University Hospitals Case Medical Center is the Primary Affiliate of Case Western Reserve University School of Medicine*

ARON 0057